Louis T. ROTFELD, Petitioner-Respondent,

v.

Wisconsin DEPARTMENT OF NATURAL
RESOURCES, Appellant.

Court of Appeals

*No. 88–1230. Submitted on briefs October 17, 1988.—Decided
November 23, 1988.*

(Also reported in 434 N.W.2d 617.)

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Robert M. Hunter,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Carlo A. Balistrieri* and *Balistrieri Law Office* of Oconomowoc.

Before Gartzke, P.J., Dykman and Eich, J.J.

DYKMAN, J. The Wisconsin Department of Natural Resources (DNR) appeals from an order reversing its order declassifying Louis Rotfeld's land from the Woodland Tax Law (WTL) program because Rotfeld had sold a portion of the land. As a result, Rotfeld was assessed a tax penalty pursuant to secs. 77.16(7) and (11), Stats.[1] The issue is whether sec.

---

[1]Sections 77.16(7) and (11), Stats., provide:

(7) The owner of the land shall follow the management plan and shall prohibit grazing and burning on lands entered under the woodland tax law. The management plan may be revised by the owner with the consent of the department. The department

77.16(7) mandates declassification of land entered under the WTL program when the landowner conveys only part of the lands under a WTL contract. Because we conclude that DNR's action in this case is based upon a reasonable reading of sec. 77.16(7), we reverse.

> may at any time cause an investigation to be made as to whether lands may continue to be classified under this section. If the department finds that the owner has not complied with the law, or if the land is no longer used for forestry purposes, it shall issue an order removing the land from the woodland tax law classification. An owner may elect to withdraw lands from under this section by filing with the department a declaration of withdrawal for any entire entry. Contracts under the woodland tax law shall be conveyed with the land to the new owner. Conveyance of lands resulting in partition of the lands under a woodland tax law contract shall be cause for declassification. Any declassification order issued on or before November 20 of any year shall take effect on January 1 of the following calendar year but all declassification orders issued after November 20 shall take effect January 1 of the calendar year following the calendar year in which declassification orders issued on or before November 20 would have been effective. A copy of the declassification order shall be sent to the owner of the land, to the supervisor of equalization of the district wherein the land is located, to the clerk and the assessor of the town or city, and to the clerk and register of deeds of the county wherein the land is located.
>
> . . . .
>
> (11) On declassification as a result of actions under sub. (7) the owner shall be liable for payment of a penalty to the town or city treasurer. The payment shall be calculated by the department at a rate of one percent of the average full value per acre of the productive forest land classes under s. 70.32, in the year before declassification in the county where the land is located, for each acre for each year the acreage remained under the provisions of this section. The full value of the productive forest land classes shall be determined each year by the department of revenue. The department shall notify the town or city clerk of the amount of the penalty together with the order of declassification. The penalty shall be included in the owner's next tax bill.

## FACTS

In 1977, Louis Rotfeld contracted with DNR to enter 151 acres of his land into the WTL program. In 1984, Rotfeld wished to sell part of this land to a member of his family. Rotfeld ordered a title search in preparation for this sale, but the search did not reveal the WTL contract. In addition, the town assessor told Rotfeld that no adverse consequences would result from the sale. After the sale, DNR concluded that sec. 77.16(7), Stats., mandated declassification, and issued an order declassifying Rotfeld's 151 acres, thereby subjecting him to a penalty. Rotfeld appealed to the circuit court. The court concluded that sec. 77.16(7) did not mandate declassification upon a partial sale of WTL land, but that declassification was within DNR's discretion. Because DNR did not exercise its discretion, the court reversed and remanded.

## STANDARD OF REVIEW

██ Our standard of review under ch. 277, Stats., is the same as the circuit court's. *Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). The interpretation of a statute by an administrative agency is a conclusion of law which may be independently reviewed by the appellate court. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979).

> However, the construction and interpretation of a statute by the administrative agency which must apply the law is entitled to great weight and if several rules or applications of rules are equally consistent with the purpose of the statute, the court should defer to the agency's interpretation. In general, the reviewing court should not upset an

administrative agency's interpretation of a statute if there exists a rational basis for that conclusion.

*Environmental Decade v. ILHR Dept.,* 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981) (citations omitted).

Our standard of review of administrative agency decisions is not always clear and the results in Wisconsin appellate courts at times appear contradictory. *See* Hewitt, *The Scope of Judicial Review of Administrative Agency Decisions in Wisconsin,* 1973 Wis. L. Rev. 554 *passim.* Even where an agency has established no body of precedent relating to its interpretation of a statute, we are still to defer to that agency's legal conclusions. *See Beloit Education Asso. v. WERC,* 73 Wis. 2d 43, 68, 242 N.W.2d 231, 243 (1976) (where there is no established body of precedent, agency's legal conclusion entitled to due weight or great bearing). We should also defer to an agency where the legal question is intertwined with policy determinations. *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984).

## DISCUSSION

Section 77.16(7), Stats., provides in pertinent part: "If the department finds that the owner has not complied with the law ... it shall issue an order removing the land from the woodland tax law classification. ... Conveyance of lands resulting in partition of the lands under a woodland tax law contract shall be cause for declassification."

Rotfeld first argues that sec. 77.16(7), Stats., is ambiguous and that there is a "major internal inconsistency" between these two sentences: "Contracts under the woodland tax law shall be conveyed with the land to the new owner. Conveyance of lands

resulting in partition of the lands under a woodland tax law contract shall be cause for declassification."

We disagree with Rotfeld. "Ambiguity arises when more than one reasonable, although not necessarily correct, meaning can be attributed to a word, phrase, or statute." *West Allis School Dist. v. DILHR,* 116 Wis. 2d 410, 418–19, 342 N.W.2d 415, 420 (1984). The statute is not ambiguous. The plain meaning of the two sentences is that the WTL contract is conveyed to a new land owner only if the entire parcel of land under the contract is conveyed to that new owner. Where only part of the land if conveyed, this action "shall be cause for declassification."

The next question is whether a partial sale requires mandatory declassification. DNR contends that sec. 77.01, Stats., which discusses the intent of the subchapter on the taxation of forest croplands, reveals an inherent conflict between DNR and the towns in which WTL lands are located. DNR argues, in effect, that it is DNR's policy to minimize this conflict, and construing sec. 77.16(7) as being mandatory complies with this policy.

Section 77.01, Stats., provides that:

> It is the intent of this subchapter to encourage a policy of protecting from destructive or premature cutting the forest growth in this state, and of reproducing and growing for the future adequate crops through sound forestry practices of forest products on lands not more useful for other purposes, so that such lands shall continue to furnish recurring forest crops for commercial use with public hunting and fishing as extra public benefits, all in a manner which shall not hamper the towns in which such lands lie from receiving their just tax revenue from such lands.

DNR claims this statute evidences two conflicting purposes: (1) to encourage protection of forest crops from premature cutting; and (2) to accomplish purpose number one in "a manner which shall not hamper the towns in which such lands lie from receiving their just tax revenue from such lands." We agree with DNR that these purposes conflict. DNR claims its interpretation of sec. 77.16(7), Stats., i.e., that DNR has no discretion to refuse to declassify land after a partial conveyance, allows DNR to avoid conflict with towns in balancing the state's interest in abundant forestry products with the towns' interest in just tax revenue. DNR argues it is necessary to construe sec. 77.16(7) as mandatory in order to balance these competing interests. We conclude that this is a policy determination to which we should defer as long as DNR's interpretation "is reasonable and does not conflict with the [statute's] legislative purpose, the legislative history, prior court decisions or constitutional prohibitions." *Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis. 2d 323, 332, 377 N.W.2d 151, 155 (1985).

Rotfeld asserts that the phrase "shall be cause for declassification" does not mandate declassification, but merely allows DNR to exercise its discretion. He concludes that any other interpretation conflicts with the statute's legislative purpose or intent.

"The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." *Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978). The word "may" is generally construed as allowing discretion. *State v. McKenzie,* 139 Wis. 2d 171, 177, 407 N.W.2d 274, 277 (Ct. App. 1987). In addition, "[w]hen the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware

of the different denotations and intended the words to have their precise meanings." *Karow,* 82 Wis. 2d at 571, 263 N.W.2d at 217. "It is reasonable to presume that the legislature chose its terms carefully and precisely to express its meaning." *McKenzie,* 139 Wis. 2d at 177, 407 N.W.2d at 277. "[T]he word 'shall' can be construed as directory if necessary to carry out the legislature's clear intent." *Karow,* 82 Wis. 2d at 571, 263 N.W.2d at 217.

In sec. 77.16(7), Stats., the legislature used both "may" and "shall." Rotfeld argues that the word "shall" should be construed as allowing DNR discretion as to whether to declassify land on the basis of a partial sale. If the legislature desired such a result, it could have done so by providing that a partial sale "*may* be cause for declassification." It did not. Rotfeld argues that a reasonable person could construe sec. 77.16(7) to support his position. Whether or not that is true, DNR's interpretation that the legislature's use of the term "shall" instead of "may" required declassification in this case is reasonable. The legislature's intent as indicated in sec. 77.01 requires DNR to balance the state's interest in protecting forest crops with the towns' interest in their tax revenues. In this case, we need not construe "shall" as directory in order to carry out the legislature's intent.

Because DNR's interpretation of sec. 77.16(7), Stats., is reasonable and does not conflict with the statute's legislative purpose, we reverse the trial court's order.

*By the Court.*—Order reversed.