Dr. Kenneth M. Wolnak,
Plaintiff-Appellant-Cross-Respondent,†

v.

Cardiovascular & Thoracic Surgeons of Central
Wisconsin (n/k/a Wausau Heart & Lung Surgeons,
S.C.), Defendant-Respondent-Cross-Appellant,††

Dr. Fernando A. Riveron,
Defendant-Respondent.††

Court of Appeals

*No. 2004AP1051. Submitted on briefs February 7, 2005.
—Decided September 7, 2005.*

2005 WI App 217

(Also reported in 706 N.W.2d 667.)

† Petition to review denied 12-14-05.
†† Petition to cross review denied 12-14-05.

561

565

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Matthew S. Mayer* of *Mallery & Zimmerman, S.C.,* of Wausau.

On behalf of the defendant-respondent-cross-appellant and the defendant-respondent, the cause was submitted on the combined briefs of *David J. Eckert* of *Tuchscherer, Eckert & Wagman, S.C.* of Wausau, and *Douglas J. Klingberg* of *Ruder, Ware & Michler, LLSC* of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. This appeal arises from a breach of contract and defamation action brought by Dr. Kenneth Wolnak against Dr. Fernando Riveron and Riveron's clinic, Cardiovascular & Thoracic Surgeons of Central Wisconsin, S.C. ("CATS").[1] CATS counterclaimed, alleging breach of contract, tortious interference with a contract, and misrepresentation. Wolnak appeals: (1) the denial of summary judgment on the tortious inference claim; (2) the denial of his motion in limine to exclude character evidence; (3) the jury's verdict finding tortious interference; (4) the granting of CATS's motion in limine excluding evidence on the

[1] We will refer to Riveron and the Clinic collectively as CATS, although from time to time, we will reference Riveron individually. Also, in reviewing the transcript, it appears that at one point, a motion was granted to *dismiss* Riveron from the case. Neither party, however, makes this an issue, and we simply mention it as a jurisdictional aside.

non-compete clause; and (5) the denial of his motion after verdict for statutory wage claim penalties.[2] CATS individually cross-appeals, arguing: (1) the damage award for CATS's breach of contract should be reduced or struck because Wolnak breached first and (2) the jury erroneously concluded CATS did not rely on Wolnak's misrepresentations. For reasons given in this opinion, we affirm in all respects.

## Background

¶ 2. CATS is a private surgical practice that Riveron joined in 1996. At that time there were two other surgeons in the practice. By 1998, they needed an additional surgeon to handle the workload and Riveron was put in charge of hiring the new doctor. Ultimately, he hired Wolnak, a surgeon he knew from his residency, based on what Riveron thought was an impressive resume.[3] Wolnak joined CATS under contract in January 1999. Dr. John Johnkoski joined the practice sometime thereafter, and the two surgeons with whom Riveron initially practiced left. Riveron eventually became president of CATS.

¶ 3. CATS is affiliated with Wausau Hospital. The hospital would not grant surgical privileges to any surgeon who did not have at least one other surgeon available as backup. This is the hospital's "two surgeon rule."

¶ 4. During Wolnak's employment at CATS, there were issues with both his performance and his compensation. According to Riveron, Wolnak's performance

---

[2] The Honorable Raymond F. Thums issued the order denying summary judgment. The Honorable C.A. Richards presided over the remaining matters.

[3] One of the issues at trial was whether Wolnak misrepresented his credentials.

problems included poor record keeping, patient handling, surgical judgment, and staff relations, as well as high morbidity and mortality rates. Regarding compensation, the contract initially based compensation on "physician production" rather than salary. Wolnak claims he was underpaid under this contract, although Riveron claims they agreed to orally modify the contractual compensation structure after repeated problems with Wolnak's performance.

¶ 5. Around Christmas 2000, Wolnak asked Riveron if he would ever become a partner in CATS. When Riveron's answer was unsatisfactory, Wolnak handed a resignation letter to Riveron, who responded that Wolnak was fired.

¶ 6. Sometime prior to this conversation, Wolnak had spoken with Johnkoski, who was also dissatisfied with his partnership track. He thought Riveron was failing to honor a verbal promise regarding the timeframe. Wolnak told Johnkoski he was thinking of resigning and forming a competing practice. When the subject of a non-compete clause within their contracts came up, Wolnak stated that he believed the clause only applied if they were fired.

¶ 7. After his conversation with Wolnak, Riveron telephoned Johnkoski, who was vacationing in Michigan. Riveron told Johnkoski that Wolnak had quit and asked Johnkoski if he was thinking of resigning as well. Johnkoski expressed his disappointment over his contract's timeline for becoming a partner, and Riveron agreed to make him a partner sooner than called for in the contract. Ultimately, Johnkoski stayed with CATS.

¶ 8. Wolnak continued to practice with the clinic for a few weeks following his resignation, but was ultimately unable to reconcile with CATS. He finally left, and commenced this action for breach of contract

and defamation. CATS counterclaimed for breach of contract, tortious interference with Johnkoski's contract, and misrepresentation.

¶ 9. The parties filed competing motions for summary judgment and the trial court denied them both, except for CATS's request to dismiss the punitive damages claim. Prior to trial, the court denied Wolnak's motion in limine to exclude character evidence against him. The court also granted CATS's motion in limine to bar Wolnak's assertion that the covenant not to compete did not apply if he resigned. After granting that motion, the court determined that it had to dismiss Wolnak's defamation claim against CATS because it had been premised on Wolnak's interpretation of the covenant.

¶ 10. Following a jury trial, the jury found that CATS breached its contract by failing to pay Wolnak according to the contract and awarded him $226,422.44. The jury also found that Wolnak misrepresented his background to obtain employment, but that CATS did not believe or rely on the misrepresentations, and awarded nothing. Finally, the jury determined that Wolnak tortiously interfered with Johnkoski's contract and awarded CATS $125,638.13. After trial, Wolnak filed a motion to change the verdict to add penalties for wage claim violations in accordance with Wis. Stat. § 103.455 and Wis. Stat. ch. 109.[4] CATS sought to change the jury's answer that it did not rely on Wolnak's misrepresentation and sought damages on that claim. The court denied the motions after verdict. Wolnak appeals and CATS individually cross-appeals.

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## Discussion

### I. Tortious Interference

¶ 11. Wolnak raises three issues regarding the tortious interference claim. First, he contends the trial court erred in denying his motion for summary judgment to dismiss the claim. Second, he claims it was error for the trial court to admit evidence pertaining to his character. Third, he argues there is insufficient evidence to support the jury's verdict. We disagree with all three assertions.

### A. Summary Judgment

¶ 12. We review summary judgments de novo, using the same methodology as the trial court and benefiting from its analysis. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. First, we examine the pleadings to determine whether there is a claim for relief and whether genuine issues of material fact exist. *Id.*, ¶ 21. If the pleadings state a claim and there are factual issues, we consider whether the moving party has made a prima facie case for summary judgment. *Id.*, ¶ 22. Inferences drawn from the material submitted by the moving party are viewed in the light most favorable to the non-moving party. *Id.*, ¶¶ 22–23. In order to be entitled to summary judgment, the moving party must prove there is no genuine issue as to any material fact and that moving party must show that it is entitled to judgment as a matter of law. *Id.*, ¶ 24.

¶ 13. Wolnak concedes CATS stated a claim upon which relief could be granted. He argues, however, that his summary judgment proofs demonstrate CATS cannot prove the elements of tortious interference, thereby

entitling him to summary judgment, despite the trial court's conclusion that issues of fact precluded granting his motion.

¶ 14. The elements of a claim for tortious interference with a contract are: (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damages; and (5) the defendant was not justified or privileged to interfere. *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994). Wolnak argues there is no issue of material fact on causation, intent, or privilege. In other words, he contends he did not cause CATS's damages, he did not act with the requisite intent, and his actions were privileged, and there is no factual dispute to the contrary. We disagree.

### 1. Causation

¶ 15. Causation exists in Wisconsin where the defendant's actions are a "substantial factor" in producing the harm to the plaintiff. *World Wide Prosthetic Supply v. Mikulsky*, 2001 WI App 133, ¶ 23, 246 Wis. 2d 461, 631 N.W.2d 253. "Substantial factor 'denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense.' " *Fischer v. Ganju*, 168 Wis. 2d 834, 857, 485 N.W.2d 10 (1992) (citation omitted).

¶ 16. Wolnak's causation argument is premised on two primary assertions. First, Wolnak points out that Johnkoski ultimately did not resign from CATS. Sec-

ond, Wolnak relies on a portion of Johnkoski's testimony where he indicated he did not believe Wolnak had anything to do with his promotion. However, neither of these facts disproves or negates causation.

¶ 17. Johnkoski's resignation was not the only way CATS could be damaged. Interference that makes the performance of a contract more expensive can also be a basis for damages. *Magnum Radio, Inc. v. Brieske*, 217 Wis. 2d 130, 136–37, 577 N.W.2d 377 (Ct. App. 1998). Johnkoski testified that he knew CATS believed he would quit and affiliate with Wolnak if his contract was not renegotiated. Indeed, Johnkoski told Riveron he was considering leaving. A jury could conclude that as a result of Wolnak's solicitations, Johnkoski believed he had leverage to renegotiate a contract he otherwise intended to honor as written. The jury heard evidence that CATS felt compelled to renegotiate Johnkoski's contract.

¶ 18. Johnkoski did, at one point, express a belief that Wolnak had no influence over his promotion. Accordingly, Wolnak implicitly argues, albeit without authority, that Johnkoski's subjective beliefs are somehow relevant to whether Wolnak caused CATS's damages. However, Johnkoski stated at another point that he thought Wolnak had some impact that forced or caused CATS to engage Johnkoski in negotiation discussions. Thus, even if Wolnak is correct that Johnkoski's opinion bears on the matter of causation, Johnkoski's own testimony reveals a factual dispute that would have precluded summary judgment. That is, there was a genuine dispute over whether Wolnak caused CATS to have to renegotiate a more expensive

contract with Johnkoski. On that disputed element alone, summary judgment was inappropriate and therefore properly denied.

## 2. Intent

¶ 19. Wolnak argues that there is no evidence he intentionally acted to interfere with Johnkoski's contract with CATS. He also contends that while his own resignation set into motion a series of events leading to Johnkoski's promotion, his resignation does not establish intent to interfere.

¶ 20. In determining intent, we may consider an individual's actions and statements. Ordinarily, it is reasonable to infer that a person intends the natural and probable consequences of his or her actions. *See* Wis JI—Civil 2780 (2003); *State v. Ivy*, 119 Wis. 2d 591, 598–99, 350 N.W.2d 622 (1984).

¶ 21. Wolnak admits that he "did discuss with Johnkoski them resigning and starting their own practice. However, Johnkoski rejected that invitation." We fail to see how Johnkoski's rejection vitiates Wolnak's actions. In order to form a new practice with Wolnak, Johnkoski would have had to walk away from—if not breach outright—his contract with CATS. Because Wolnak attempted to make Johnkoski leave CATS, we cannot see how Wolnak intended anything but interference, at least when we view the evidence in the light most favorable to CATS. Simply because the result was not what Wolnak sought does not mean he did not exert the requisite intent.

¶ 22. Wolnak tries to analogize to *Cudd v. Crownhart*, 122 Wis. 2d 656, 364 N.W.2d 158 (Ct. App. 1985), as a way of showing he lacked intent. His analogy is

576

unavailing. In *Cudd*, Morrow, a co-owner of Cudd's real estate, was on the property with prospective purchaser Toth. While Morrow and Toth were examining the land, Cudd's neighbor, Crownhart, approached and informed Toth there was a boundary dispute. Toth never made an offer and testified he would have but for the boundary dispute with Crownhart.

¶ 23. Cudd and Morrow brought an action against Crownhart for tortious inference. The jury found for Cudd and Morrow, but we reversed, holding there was no evidence from which the jury could have inferred intent. The record established the boundary dispute had been ongoing and that Toth would have still made an offer had Cudd and Morrow shown they were taking steps to resolve the dispute. Toth tried on three occasions to have Cudd and Morrow prove they had resolved the dispute, but they never responded to his inquires. Eventually, the boundary dispute was actually settled in Cudd and Morrow's favor.

¶ 24. We determined, however, that Crownhart had been exercising a right to protect what he thought was legally his. Although Crownhart was ultimately adjudicated incorrect, his attempt to protect what he thought was his could not be the sole basis for liability, and Cudd and Morrow had no other evidence of Crownhart's intent.

■

¶ 25. Wolnak says that "like Crownhart, Wolnak was simply telling Johnkoski what he believed." We did not hold Crownhart simply told Toth what he believed. We held Crownhart had a legally protected right to assert a claim to real estate. Inviting Johnkoski to abandon his contract with CATS to start a new practice because Wolnak disagreed with or disliked Riveron is not the same thing as asserting a claim to real estate.

577

Thus, sufficient evidence of Wolnak's intent was presented for CATS to survive summary judgment.

### 3. Privilege

¶ 26. Wolnak argues "CATS submitted no evidence that Wolnak acted improperly and instead seemed to assert that any interference is improper." Further, he argues, "[t]here is nothing inherently wrong with urging someone to resign from a contract and join him in a business."

¶ 27. Wolnak contends encouraging breach of contract for the purposes of competition is privileged. The burden for demonstrating privilege is on Wolnak to prove he had privilege, not on CATS to disprove it. WIS JI—CIVIL 2780.[5] Wolnak relies on two cases to support his argument that he did nothing wrong by urging Johnkoski to quit CATS and join him but, again, his reliance is misplaced. The two cases on which he relies—*Stop-N-Go of Madison, Inc. v. Uno-Ven Co.*, 184 F.3d 672 (7th Cir. 1999), and *Patton v. Mid-Continent Systems, Inc.*, 841 F.2d 742 (7th Cir. 1988)—speak of *efficient* contract breaches,[6] and neither case has anything to do with direct competition as does the present case.

¶ 28. While it is true that society, in general, will not interfere with efficient breaches because they actu-

---

[5] To say there is nothing wrong with urging someone to break a valid contract so as to join someone else in a business venture would seem to eviscerate tortious interference as a cause of action.

[6] An efficient breach is an "intentional breach of contract and payment of damages by a party who would incur greater economic loss by performing under the contract." BLACK'S LAW DICTIONARY 200 (8th ed. 2004).

ally benefit society, courts routinely note that one element of an efficient breach is that someone remains liable for damages arising from the breach. *See Stop-N-Go*, 184 F.3d at 680; *Patton*, 841 F.2d at 750. Wolnak, however, attempts to escape all liability for the breach.

¶ 29. Moreover, assuming without deciding that competition is, in fact, privileged, the privilege does not extend to encouraging the breach of an existing contract. *See National Oil Co. v. Phillips Petrol. Co.*, 265 F. Supp. 320, 329 (W.D. Wis. 1966) (citing Restatement of Torts, § 768 cmt. i (1939)); *see also* 45 Am. Jur. 2d *Interference* § 29 (1999) ("The privilege of competition protects solicitation for future business, not interference with existing contracts.").

¶ 30. Wolnak has not shown any facts that would entitle him to summary judgment on the basis of privileged actions. Thus, the court properly denied Wolnak's motion for summary judgment.

## B. Character Evidence

¶ 31. Wolnak filed a motion in limine, which the court denied, seeking to prohibit admission of Dr. Christopher Stone's deposition testimony. Wolnak argues the court erred in denying the motion because it resulted in the admission of character evidence against him.

¶ 32. In his deposition, Stone testified regarding Wolnak's attempts to compete with him in Kenosha after Wolnak left Wausau. Wolnak argues this evidence is improper because it "was introduced to show that Wolnak must have tortiously interfered with Johnkoski's contract with CATS because he had tried to compete with Dr. Stone . . . ."

¶ 33. Without deciding whether it was error to admit the deposition, we are satisfied its admission was not prejudicial because the evidence was cumulative. Stone actually testified at trial, providing the same information as was in the deposition. Wolnak did not object to Stone's trial testimony.[7]

## C. Sufficiency of the evidence

¶ 34. A jury verdict "will not be upset if there is any credible evidence to support it." *Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979). We view the evidence in the light most favorable to the verdict. *Id.*

¶ 35. Wolnak's sufficiency arguments closely mirror his summary judgment arguments. Wolnak contends there is insufficient evidence of causation and insufficient evidence he acted improperly.[8] For the reasons stated, we disagree with Wolnak's assertions.

---

[7] Wolnak also complained it was error to allow evidence of his morbidity and mortality rates because they portray him as a bad physician and lead to the implication that he therefore must have interfered with Johnkoski's contract. However, there is sufficient evidence from which the jury could find tortious interference, even without this evidence.

[8] Wolnak does not directly raise the sufficiency of the evidence issue regarding intent. To the extent he might claim he did, we would simply refer to ¶ 21, *infra*. Wolnak admitted speaking to Johnkoski about abandoning his contract with CATS. This is sufficient evidence to support a verdict of intentional interference, regardless of whether Johnkoski actually accepted Wolnak's offer.

## 1. Causation

¶ 36. Wolnak focuses a great deal on what Johnkoski did or did not do. Essentially, Wolnak's argument is that because Johnkoski ultimately did not resign, he did not breach his contract and, therefore, Wolnak cannot be said to have interfered. Wolnak's argument is disposed of by *Magnum Radio*. There the question was "whether a person whose alleged interference with a contractual relationship results not in abandonment or nonperformance of the contract but only in making the plaintiff's performance of the contract more expensive or onerous may also be held liable for his or her actions." *Id.* at 136–37. We answered that question affirmatively, based on the RESTATEMENT (SECOND) OF TORTS, § 766A (1979).

¶ 37. In this case, Riveron testified that he believed CATS had to accelerate or renegotiate the terms of Johnkoski's contract—at a higher price—to keep Johnkoski. This is supported, at least tangentially, by Johnkoski's testimony that he thought Wolnak's offer had some impact. The jury was entitled to believe as little or as much of the evidence as was submitted, and when it comes to testimony of witnesses, the jury is in the best position to evaluate the veracity of the witnesses. *In re Estate of Dejmal*, 95 Wis. 2d 141, 151–52, 289 N.W.2d 813 (1980). Neither Riveron's nor Johnkoski's testimony is patently incredible. *See Thomas v. State*, 92 Wis. 2d 372, 381–82, 284 N.W.2d 917 (1979). As such, the testimony sufficiently supports a determination that Wolnak caused CATS damage by making it more expensive to perform CATS's portion of Johnkoski's contract.

## 2. Privilege

¶ 38. Wolnak argues there is insufficient evidence that he acted improperly. As stated above, however, the burden of proof is on him to show that his actions were privileged. He fails to carry this burden.

¶ 39. The summary judgment discussion applies equally here. The cases on which Wolnak relies speak of efficient breaches and specifically acknowledge that someone must be held liable for the breach. Wolnak ignores the portions of those cases discussing payment for the breach. And, in any event, "competition" as a motivating force is not protected when it is used to interfere with existing contracts. *National Oil*, 265 F. Supp. at 329. Thus, Wolnak not only failed to present factual evidence of privilege to the jury, but he failed as a matter of law to demonstrate that his actions were privileged. With no legal or factual basis for his claim, the jury was free to reject that theory.

## II. Motion In Limine Regarding Covenant Not to Compete

¶ 40. Wolnak made a claim against CATS and Riveron for defamation. He claimed that at the time he was interviewing with Marshfield Clinic for a position, Riveron informed the Clinic of a noncompete clause in Wolnak's contract. The clause states:

> The surgeon agrees that for a period of two (2) years following the termination of his employment by the corporation, that surgeon will not ... in any capacity engage in practice of cardiovascular or thoracic surgery ... within a radius of fifty (50) miles from Wausau Hospital.

¶ 41. Wolnak believed this clause applied only if CATS fired him because the clause stated "following the termination of his employment *by the corporation.*" (Emphasis added.) CATS argued it applied whatever way Wolnak's employment ended and brought a motion in limine to preclude Wolnak from arguing his interpretation. The trial court granted the motion, stating the covenant was reasonable as to time and geographical restrictions, but without specifically interpreting the disputed language. Because the court essentially concluded that the covenant applied whether Wolnak resigned or was fired, it dismissed the defamation claim.

¶ 42. We will assume without deciding the trial court erred in interpreting the covenant and that Wolnak is correct to state the covenant applies only if he is fired.[9] Nonetheless, we conclude the error was harmless.

██

¶ 43. "An error does not require reversal unless it affects the substantial rights of the party seeking to set aside the judgment." *Hannemann v. Boyson*, 2005 WI 94, ¶ 57, 698 N.W.2d 714 (citing WIS. STAT. § 805.18(2)). Thus, we must determine whether the error was prejudicial or harmless. The test for harmless error in civil cases is the same as that in criminal cases." *Id.* (citation omitted). The question is whether it is clear beyond a reasonable doubt that a rational jury would have reached the same result or verdict absent the error. *See id.,* ¶¶ 57–58.

---

[9] There was a dispute as to whether Wolnak was fired or quit. Evidently, Wolnak handed Riveron a sealed letter of resignation. Riveron dropped the letter to the ground without opening it and then fired Wolnak. For purposes of this particular issue, we assume that Wolnak resigned.

¶ 44. The basis of Wolnak's defamation claim was that Riveron prevented him from being hired by Marshfield Clinic when Riveron informed the Clinic of Wolnak's noncompete clause. This presumes the Clinic would have failed to hire Wolnak because it did not wish to be a party to the breach of that clause. Wolnak's claim fails for two reasons. First and foremost, Wolnak himself informed the Clinic of the existence of the clause. Wolnak's disclosure makes it irrelevant whether Riveron also disclosed the information.

¶ 45. Moreover, there was ample evidence that Wolnak abandoned the interview process with the Clinic, essentially removing himself from consideration for any position, and there is nothing linking this to disclosure of the noncompete clause. Thus, even if the court had allowed evidence of Wolnak's interpretation, we are convinced a reasonable jury would have reached the same result as the trial court. That is, Wolnak ultimately defeated himself at the Clinic; CATS did not defame him.

### III. Motion After Verdict: Wage Penalties

### A. Wisconsin Stat. § 103.455

¶ 46. Wolnak claims he is entitled to damages for wrongful deductions from his wages for faulty workmanship contrary to Wis. Stat. § 103.455. CATS argues Wolnak is not entitled to relief under the statute because he failed to plead it as a basis for damages. Wolnak responds that his complaint is sufficient under Wisconsin's notice pleading rules. We reject Wolnak's assertion.

¶ 47. The sufficiency of a complaint is a question of law we review de novo. *Green v. Heritage Mut. Ins. Co.*, 2002 WI App 297, ¶ 10, 258 Wis. 2d 843, 655 N.W.2d 147. We are, indeed, a notice pleading state. WIS. STAT. § 802.02. Under notice pleading, one need only give the opposing party fair notice of what the claim is and the grounds upon which it is based. *Hertlein v. Huchthausen*, 133 Wis. 2d 67, 72, 393 N.W.2d 299 (Ct. App. 1986).

¶ 48. When we review the complaint's sufficiency, we examine whether it contains sufficient details to give the defendant and the court a fair idea of what the plaintiff is complaining about. We construe pleadings liberally, but will only look to the four corners of the document. *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610, 614, 535 N.W.2d 81 (Ct. App. 1995).

¶ 49. Wolnak contends his complaint is sufficient because he alleged he was not paid according to his contract. We conclude this is insufficient to put the defendant and court on notice that Wolnak would seek WIS. STAT. § 103.455 damages.

¶ 50. WISCONSIN STAT. § 103.455 states, in relevant part:

> No employer may make any deduction from the wages due or earned by any employee, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employee authorizes the employer in writing to make that deduction. . . . If any deduction is made or credit taken by any employer that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by the employee. . . .

¶ 51. Thus, what the statute does is identify a specific, prohibited employment practice and a penalty for employers engaged in such an activity. There need not be a contract for an employer to breach Wis. STAT. § 103.455, and a violation of that statute may not necessarily be a breach of contract.

■■■■■■■■■

¶ 52. Moreover, to the extent that Wis. STAT. § 103.455 imposes, and Wolnak sought, punitive damages on an employer, punitive damages are not generally allowed in breach of contract actions. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 28, 270 Wis. 2d 146, 677 N.W.2d 233. Indeed, the elementary rule of contract damages is to restore a party to the position he would have been in but for the breach. *United Leasing & Fin. Servs., Inc. v. R.F. Optical, Inc.*, 103 Wis. 2d 488, 492, 309 N.W.2d 23 (Ct. App. 1981). Thus, we conclude § 103.455 necessarily creates a separate and distinct claim from simple breach of contract, and it must be pled as such.[10]

---

[10] In addition, under notice pleading, the plaintiff must allege facts which, if proven true, show that he is entitled to relief. Here, Wolnak conceded that it was not until *after* Riveron testified that he had a factual basis for a Wis. STAT. § 103.455 claim. This means his complaint would not have shown he was entitled to relief. While Wolnak moved, at the close of CATS's case, to conform his pleadings to the evidence, he has not shown that the court ever granted this motion. *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶ 6, 239 Wis. 2d 406, 620 N.W.2d 463 (we will not search the record for evidence to support a party's argument). Thus, his complaint was insufficient in this respect as well.

On the merits of the claim, we are not convinced that Wis. STAT. § 103.455 applies here. Section 103.455 exists to prevent

## B. Wisconsin Stat. ch. 109

¶ 53. Wolnak argues he is entitled to penalty wages and costs under Wis. Stat. ch. 109. Wolnak argues the trial court erroneously exercised its discretion when it stated that it saw no reason to change the jury's verdict on the breach of contract action and did not explain its reasoning for not awarding him damages under ch. 109. CATS contends Wolnak is not entitled to the damages because he has failed to show any maliciousness warranting penalty wages and he was not the prevailing party so is not entitled to costs.

■

¶ 54. The decisions whether to impose a penalty under Wis. Stat. § 109.11(2)(a) or award costs under Wis. Stat. § 109.03(6) are committed to the trial court's discretion by use of the word "may" instead of "shall." *See Rotfeld v. DNR*, 147 Wis. 2d 720, 726, 434 N.W.2d 617 (Ct. App. 1988). The trial court properly exercises its discretion when it applies the appropriate legal standard to the facts of record and, following a logical reasoning process, draws a conclusion a reasonable judge could reach. *Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 572, 538 N.W.2d 849 (Ct. App. 1995). Only wrongful withholding of wages for dilatory or other unjust reasons should be penalized. *American Fed'n of State, Local 1901 v. Brown County*, 146 Wis. 2d 728, 731, 432 N.W.2d 571 (1988).

---

wrongful deduction meant "to shift the burden of a work related loss" from the employer to the employee. *Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 751–52, 512 N.W.2d 487 (1994) (citation omitted). While Wolnak cites Riveron's testimony referring to "withhold[ing] money from him because his workmanship . . . was defective," we think this more accurately establishes a complete refusal to pay Wolnak, which is governed by Wis. Stat. ch. 109.

¶ 55. We generally look for reasons to sustain discretionary decisions. *Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991). When the trial court's reasoning is inadequate or incomplete, we may independently review the record to look for additional reasons to support the court's exercise of discretion. *See Stan's Lumber*, 196 Wis. 2d at 573.

¶ 56. First, Wis. Stat. ch. 109 penalties, as Wolnak points out, are not appropriately jury questions. Thus, the court should not have been expected to change the *jury* verdict or answers to reflect a penalty, although it conceivably could have supplemented the award with its own order.

¶ 57. Second, just as we concluded a Wis. Stat. § 103.455 claim must be pled with specificity, so too must a Wis. Stat. ch. 109 claim. Such a conclusion is even more strongly supported in this instance, because the chapter refers multiple times to a wage claim. Wolnak did not bring a wage claim, he brought a contract action. While the contact dealt with a dispute over compensation, Wis. Stat. § 109.03(5) establishes a distinct cause of action and enforcement procedure for a wage claim, wholly apart from any contract claims Wolnak might pursue. Additionally, we again have a situation where Wolnak seeks to have penalties assessed on a contract action. Thus, we conclude that merely pleading a contract action based on nonpayment of wages is insufficient to trigger a Wis. Stat. ch. 109 wage claim under notice pleading.

¶ 58. More to the point, we are not convinced that CATS's withholding wages was dilatory or otherwise unjust. There appears to have been a legitimate dispute over the terms of Wolnak's compensation following an oral agreement to modify his contract. That is, it appears CATS believed it had paid Wolnak in full based on its understanding of the contract. In addition, Wolnak and his accountant conceded at trial that Wolnak had been overpaid in 1999. Although this is not meant to excuse an employer's wrongful refusal to pay wages —the employer has other remedies—it is not necessarily unreasonable for the court to consider this a mitigating circumstance when determining whether to assess penalty wages.

¶ 59. Finally, Wolnak was not the prevailing party as that term is used in WIS. STAT. § 109.03(6) or WIS. STAT. § 109.11. Wolnak argues he is the prevailing party because the jury found CATS breached the contract. But Wolnak ignores the plain language of the statutes. Both refer to the prevailing party in a *wage claim*. This was not a wage claim. The statutes do not apply, and Wolnak is not entitled to the penalty wages or costs. However, even if the statutes did apply, the record supports a discretionary determination not to award those penalties.

## IV. Cross-Appeal

¶ 60. CATS individually cross-appeals two portions of the judgment. First, it challenges the damage award to Wolnak because, it contends, he breached the contract first, absolving it of any obligation to perform

its part of the contract. Second, it contends it was entitled to damages for Wolnak's misrepresentation as found by the jury. We reject both arguments.

¶ 61. Again, we review a jury's verdict to see if there is any credible evidence to support the verdict. *Meurer*, 90 Wis. 2d at 450. There is sufficient evidence from which the jury could have inferred Wolnak upheld his portion of the contract.

¶ 62. Riveron testified that he had problems with Wolnak from the very beginning of his employment. These problems did not, however, result in CATS firing Wolnak but rather in an oral modification to his compensation scheme. Wolnak showed, through W-2 forms, that he had not been compensated correctly. Moreover, the trial court noted while ruling on the post-verdict motions, Wolnak continued to perform surgeries and services for CATS, generating revenue for the clinic, even if he may have ignored admonitions about the types of surgeries he was to perform.

¶ 63. Nonetheless, it is clear the jury considered Wolnak's responsibility under the contract was to generate income for CATS in exchange for compensation. Wolnak provided services, but CATS failed to pay him correctly. This is supported by credible evidence of record, even if there are other conclusions that could be drawn.[11]

---

[11] In the alternative, CATS asks us to reduce the damage award. The jury awarded approximately $116,000 on the basis of a clause in the contract that CATS would pay Wolnak for ninety days' worth of services following his termination. The sole basis for CATS's remittitur is its argument that the contract does not apply because Wolnak breached the contract. As stated above, there was sufficient evidence from which the jury could reject the notion of Wolnak's breach.

¶ 64. Regarding the misrepresentation, it is true that the jury determined Wolnak misrepresented himself when he applied to work for CATS. It is also true CATS would be entitled to damages if it relied on Wolnak's misrepresentations to its detriment. However, there was sufficient evidence from which the jury could conclude that CATS did not rely on Wolnak's misrepresentations.

¶ 65. Riveron knew Wolnak from Loyola University and they had kept in touch over the years. Indeed, the two had phone conversations where Wolnak expressed frustration in his job search. Dr. Stone and two other physicians—all at least as experienced as Riveron —testified that looking at Wolnak's resume, they could determine almost instantly that there were obvious problems with his so-called credentials.

¶ 66. On the basis of that evidence, the trial court explicitly and properly acquiesced to the jury's duty to weigh evidence and assess witness credibility. This evidence is sufficient to support a conclusion that, although Wolnak may have misrepresented himself on paper, Riveron either knew or should have known, on CATS's behalf, that reliance on those pretenses was inappropriate.

*By the Court.*—Judgment and orders affirmed. No costs awarded.