**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 23, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP1351**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020ME108

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF D.D.A.

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

D.D.A.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Affirmed*.

¶1    NEUBAUER, C.J.[1]  D.D.A. appeals from circuit court orders extending his mental health commitment for twelve months under WIS. STAT. § 51.20(13)(g) and ordering involuntary medication and treatment on an outpatient basis under WIS. STAT. § 51.61(1)(g).  D.D.A. contends that his recommitment violated his procedural due process rights because the petition did not provide sufficient notice of the specific statutory section under which Winnebago County (the County) was proceeding.  D.D.A. further argues that the County failed to establish the necessary elements to recommit him and, finally, that there was insufficient evidence to extend his involuntary medication order.[2]

¶2    We reject D.D.A.'s challenge.  D.D.A. forfeited his right to challenge the lack of notice but, even if he had not, he had sufficient notice of the allegations in the petition for extension of his commitment.[3]  The County met its burden of proving that D.D.A. is a proper subject for recommitment and involuntary medication under WIS. STAT. § 51.20(1)(am).  We affirm the circuit court's orders.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] On November 17, 2020, D.D.A. filed a motion with this court requesting that we advance the submission of the case so as to avoid any risk that the issues become moot.  Because we are deciding this case before the orders at issue expire, we reject D.D.A.'s motion as unnecessary and therefore deny the motion.

[3] "Chapter 51 indifferently uses 'recommitment' and 'extension of a commitment,' so we will as well."  *Waukesha County v. S.L.L.*, 2019 WI 66, ¶9 n.8, 387 Wis. 2d 333, 929 N.W.2d 140 (citation omitted).

**BACKGROUND**

¶3     D.D.A. has been the subject of commitment orders under WIS. STAT. ch. 51 since 2012, and his most recent prior twelve-month commitment extension was entered in April 2019.  In March 2020, the County filed a petition to again extend D.D.A.'s mental health commitment for a twelve-month period.  The grounds for recommitment cited by the County included an opinion by his treating psychiatrist, Dr. Thomas Michlowski, that D.D.A. "continues to have substantial disorders to thought, mood and perception which are grossly impairing his judgement, ability to recognize reality and perform the ordinary demands of life when he is not under treatment."

¶4     The circuit court held a hearing on the County's petition on March 26, 2020.  Dr. George Monese, a staff psychiatrist at the Wisconsin Resource Center (WRC) where D.D.A. is currently being treated, testified that D.D.A. has schizophrenia that "grossly impair[s]" D.D.A.'s "[j]udgment, behavior, and capacity to recognize reality."  Monese stated that "in [his] opinion if treatment were withdrawn, [D.D.A. would] become a proper subject for commitment."  Monese asserted that D.D.A. "is unable to give informed consent and is incompetent to refuse his suggested treatment."  Monese opined that D.D.A. "remains delusional" and that "[h]e reports he has had chips placed inside of his head by the CIA that are spying on him."  These delusional beliefs have persisted throughout D.D.A.'s treatment "in various forms."  Monese also testified to his opinion that D.D.A. would discontinue his psychotropic medications if he were not under commitment.

¶5     D.D.A. testified at the recommitment hearing as well.  He testified that he does not believe he has schizophrenia but that, instead, he "ha[s] cameras

in [his] eyes" that were put there by CIA agents when he was two years old. D.D.A. testified that until the cameras come out "I'll still be subject to anger and resentment and retaliation." He further testified that he has "anger problems" that he attributes to his being housed with homosexual roommates at WRC. He said he has experienced negative side effects from his prescribed psychotropic medications that he claims caused him to exhibit "suicidal tendencies" and want to "hurt people because of the medications especially Fluphenazine which makes me really upset and angry." He also stated that he has "threatened to kill staff and inmates so [he] could be single celled."

¶6 Following argument by the County and D.D.A.'s counsel, the circuit court issued an oral decision granting the County's request for D.D.A.'s recommitment and involuntary medication for a period of twelve months. Formal written orders followed. D.D.A. appeals. Additional facts are discussed below.

## DISCUSSION

*Sufficiency of the Petition*

¶7 For the first time on appeal, D.D.A. argues that the County's petition for recommitment is procedurally deficient because it failed to provide him with adequate notice of the WIS. STAT. ch. 51 statutory section under which the County sought recommitment. More specifically, D.D.A. asserts that the County could have sought recommitment under either WIS. STAT. § 51.20(1)(am) or (1)(ar) (applicable to inmates),[4] which have some overlapping and some different criteria,

---

[4] If the individual is an inmate, as is the case for D.D.A., the statutes provide that a county *may* also seek an extension of commitment under WIS. STAT. § 51.20(1)(ar), but an extension pursuant to that section requires proof of a "hefty set of requirements." *Winnebago County v. Christopher S.*, 2016 WI 1, ¶29, 366 Wis. 2d 1, 878 N.W.2d 109.

and the County's failure to specify by number which statute should apply left him "in the impossible procedural posture of having to defend against a moving and loosely defined target." D.D.A. admits that his counsel did not raise the notice issue with the circuit court at any point during the proceedings, but argues that we should reverse his recommitment on this ground notwithstanding the forfeiture.[5]

¶8      The County argues that D.D.A. forfeited his right to argue that the pleadings were deficient by failing to raise it in the circuit court. The County further argues that even if we decide to take up the issue on appeal, we should not reverse because it was apparent from the petition that it was proceeding under WIS. STAT. § 51.20(1)(am) given that the petition clearly set forth, verbatim, all of the elements required under that statute.

¶9      As an initial matter, we agree with the State that D.D.A.'s arguments regarding the petition itself are forfeited because he did not complain of the issue in the circuit court. Moreover, even setting aside the forfeiture, we decline to reverse under any theory because the petition was sufficient to put D.D.A. on notice of the basis for the recommitment proceedings against him. Although the County did not set forth by number the statutory subsection under which it sought to extend his commitment, the petition specifically set out, word-for-word, the

---

[5] D.D.A. argues that we should reverse under the plain error doctrine. Even if the plain error doctrine, which is typically applied to evidentiary issues, applied to this type of alleged error, we would decline the invitation to apply it here because we conclude that D.D.A. had ample notice of the allegations against him.

elements that formed the basis for the recommitment pursuant to WIS. STAT. § 51.20(1)(am).[6]

¶10 The Wisconsin Supreme Court recently addressed the requirements for the notice and pleadings in a WIS. STAT. ch. 51 proceeding to extend commitment, explaining the basics as follows:

> [W]e now consider the nature of notice the County must provide to [a committee] before conducting the Extension Hearing. The procedural rules governing extension hearings appear in WIS. STAT. § 51.20(13)(g)3: "Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13)." This, in turn, incorporates our rules of civil procedure (except to the extent they conflict with Chapter 51): "Except as otherwise provided in this chapter, the rules of evidence in civil actions and [WIS. STAT. §] 801.01(2) apply to any judicial proceeding or hearing under this chapter." [Sec.] 51.20(10)(c).
>
> The combination of these procedural rules requires the County to serve on [the committee] three items prior to the Extension Hearing. First, by virtue of the incorporation of WIS. STAT. § 801.14, the County must serve the Extension Petition itself. Second, notice of the Extension Hearing must be served pursuant to WIS. STAT. § 51.20(10)(a) ("Within a reasonable time prior to the final hearing, the petitioner's counsel shall notify the subject individual and his or her counsel of the time and place of final hearing."). And third, "[w]ithin a reasonable time prior to the final hearing, each party shall notify all other parties of all

---

[6] The petition is titled, in all capital letters, "PETITION FOR EXTENSION OF COMMITMENT AND FOR MEDICATION AND TREATMENT." The Petition clearly and concisely alleges that D.D.A. is mentally ill, is a proper subject for treatment, and is dangerous, the required elements under WIS. STAT. § 51.20(1)(a). The Petition quotes verbatim the dangerousness standard from § 51.20(1)(am) for the extension when it alleges that "[t]here is a substantial likelihood, based upon [D.D.A.'s] treatment record, that he would be a proper subject for commitment if treatment were withdrawn." The Petition incorporates by reference a treating psychiatrist's letter, and the County also filed the doctor's letter separately. Without specifically citing § 51.20(1)(am), the doctor's letter states that the required elements for recommitment are present, including the same dangerousness standard alleged in the Petition.

> witnesses he or she intends to call at the hearing and of the substance of their proposed testimony." ***Id.***

***Waukesha County v. S.L.L.***, 2019 WI 66, ¶¶22-23, 387 Wis. 2d 333, 929 N.W.2d 140 (fifth alteration in original).

¶11 Of the requirements set forth in ***S.L.L.***, the only one at issue in this case is the sufficiency of the petition, which the court clearly states is governed by WIS. STAT. § 51.20(10)-(13). *See* ***S.L.L.***, 387 Wis. 2d 333, ¶27. The court further observes that these "subsections specify the content of the notice." ***Id.*** Of import to this case, these subsections specifically include the instruction that "[t]he court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party." Sec. 51.20(10)(c). Also of import is the fact that nothing in subsecs. (10) to (13) requires that the petition include by number the statutory section under which a county seeks an extension.

¶12 Petitions filed for involuntary commitment and recommitment "shall contain a clear and concise statement of the facts which constitute probable cause to believe the allegations of the petition." WIS. STAT. § 51.20(1)(c). There is no question here that the petition at issue was clear and concise. As noted above, WIS. STAT. ch. 51 proceedings and pleadings conform to Wisconsin's rules of civil procedure which establish a system of notice pleadings. *See* WIS. STAT. § 802.02(1) (requiring only that pleadings contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief" and "[a] demand for judgment for the relief the pleader seeks"). When reviewing a complaint or, in this case, a petition for sufficiency in a notice pleading system, "we examine whether it contains sufficient details to give the

defendant and the court a fair idea of what the plaintiff is complaining about." *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶48, 287 Wis. 2d 560, 706 N.W.2d 667.

¶13 Construing the petition here, we conclude that it was sufficient to put D.D.A. on notice that the recommitment sought was under WIS. STAT. § 51.20(1)(am) and it met all of the statutory requirements under civil pleading standards.[7] The petition contained a "clear and concise" recitation of the facts and relief sought, using language pulled, verbatim, from § 51.20(1)(am). This petition adequately noticed the recommitment proceeding.

¶14 Notably, D.D.A. does not articulate any harm that he suffered from the alleged lack of notice other than his assertion that he was not on notice that he had to refute allegations of dangerousness at the recommitment hearing. We reject this contention; it simply is not true. D.D.A. was on notice during the recommitment trial that the County sought to prove dangerousness under the recommitment dangerousness standard at the time of the hearing; namely, that D.D.A. would become a proper subject for commitment if treatment were withdrawn. We therefore decline D.D.A.'s request that we reverse because we conclude that the petition did not violate his due process rights.

---

[7] The petition in this case was signed on March 12, 2020, and the final hearing held on March 26, 2020. As such, as the County points out in its briefing, D.D.A.'s case was pled and decided prior to *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, which held on April 24, 2020, that "*going forward* circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." *See D.J.W.*, 391 Wis. 2d 231, ¶40 (emphasis added)).

*Sufficiency of the Evidence*

¶15  D.D.A. next argues that there was insufficient evidence to support the circuit court's recommitment order and extension of his involuntary medication order regardless of which section the County proceeded under—WIS. STAT. § 51.20(1)(am) or (1)(ar).  We concluded above that the County sought an order under § 51.20(1)(am), as was clear from the language used in the petition and by Michlowski in his request that the County seek recommitment.  We therefore confine our analysis to whether the evidence presented at the recommitment hearing was sufficient under the requirements of subsec. (1)(am) to support the circuit court's orders.  *See Lake Delavan Prop. Co. v. City of Delavan*, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632 (when one issue is dispositive on appeal, we need not address other issues).

¶16  Once an individual is subject to a commitment order, the county may petition for the extension of that commitment under WIS. STAT. § 51.20(13)(g)3. The circuit court must then determine (1) whether, pursuant to § 51.20(1)(a)1., the individual is mentally ill and is a proper subject for commitment and (2) whether the individual is dangerous under § 51.20(1)(a)2.  However, if an individual has been the subject of outpatient treatment for mental illness immediately prior to the commencement of the proceedings as a result of a commitment ordered by the court, the requirements of § 51.20(1)(a)2. may be satisfied by showing "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am).

¶17  The burden of proof is on the county to establish evidence that the subject individual is in need of continued commitment.  *See* WIS. STAT.

§ 51.20(13)(g)3. The county must prove all required facts by clear and convincing evidence. *See* § 51.20(13)(e). On review, we will overturn the circuit court's findings of fact if they are clearly erroneous. ***K.N.K. v. Buhler***, 139 Wis. 2d 190, 198, 407 N.W.2d 281 (Ct. App. 1987). However, application of the facts to statutory recommitment requirements presents a question of law we review de novo. ***Id.***

¶18      Pursuant to WIS. STAT. § 51.20(1)(a)2.c., an individual is dangerous when he or she "[e]vidences such impaired judgment … that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." Recent acts or omissions are not required to be shown in extension proceedings. ***Portage County v. J.W.K.***, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. Rather, current dangerousness must be shown. ***Id.*** Again, that may be satisfied by showing "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am).

¶19      We conclude that there is sufficient evidence in the record to support the circuit court's recommitment order in light of the standards set forth above. Monese's testimony establishes that D.D.A. suffers from schizophrenia. D.D.A. does not believe that he is mentally ill, and, when given the choice, he refuses to take several of the psychotropic medications prescribed to him. In fact, testimony at the hearing established that the only medication he takes regularly is a shot that is administered to him at WRC. As a result of his lack of compliance with his prescribed oral medication regimen, according to Monese, D.D.A. made serious threats that resulted in him moving from a medium custody prison, to "a much higher custody" prison.

¶20    D.D.A. testified that he was moved to the more secure facility after he "threatened to kill staff and inmates." D.D.A. also testified that the medications cause him to have "[s]uicidal tendencies," that they make him want to harm people, and that they upset and anger him. According to D.D.A., the CIA has attempted to kill him by putting "a nail through the side of [his] head" because "they wanted to take [his] brain out and they wanted to put it inside their heads." D.D.A.'s testimony and treatment history illustrate that he would be a proper subject for commitment if treatment were withdrawn because it evidences such impaired judgment that there is a substantial probability of physical impairment or injury to himself or others. Therefore, his treatment history supports the court's ultimate conclusion that he is dangerous under the applicable recommitment standards.

¶21    The evidence was also sufficient to show that D.D.A. was incompetent to refuse medication. *See* WIS. STAT. § 51.61(1)(g)4. We further conclude that there is sufficient evidence to support the circuit court's order for involuntary medication under § 51.61(1)(g)2. The court may find that an individual is not competent to refuse medication or treatment if, because of his or her mental illness, the individual is either "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives," or "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." Sec. 51.61(1)(g)4.a.–b. In order for the court to make this finding, there must be evidence presented that the advantages and disadvantages of, as well as alternatives to, accepting the recommended medication or treatment have been explained to the patient. Sec. 51.61(1)(g)4.

11

¶22    As discussed above, in reaching its determination that the County had met its burden of proof, the circuit court referenced the testimony of Monese that D.D.A. has schizophrenia, is a proper subject for treatment, and that his dangerousness can be controlled by medication. Monese testified that D.D.A. was taking three psychotropic drugs: Fluphenazine "every two weeks intermuscularly" and Thorazine and Piazosin nightly. He testified that the drugs would have "therapeutic value" and that they would improve D.D.A.'s "ability to prepare for or participate in subsequent legal proceedings." Monese also testified on both direct and cross-examination that over time, care providers attempted several trials of different medications and considered ways to mitigate side effects and that they had ultimately landed on his current regimen, which the care providers believe to be the best combination for D.D.A.

¶23    Monese testified at the hearing that to prepare for his testimony, he reviewed D.D.A.'s treatment records, which indicated that Michlowski had explained to D.D.A. the advantages, disadvantages, and alternatives to the recommended medications.[8] Monese also stated that he attempted to meet with D.D.A. two days prior to the trial to prepare for his testimony, but D.D.A. refused to talk to him. However, while they waited for the trial to begin, Monese was able to talk with D.D.A. about his medications. Monese testified that he and D.D.A. had discussed the negative side effects of the medication, how to ameliorate the

---

[8] Although given the opportunity to do so and with the benefit of experienced counsel at the hearing, D.D.A. did not challenge Monese's testimony that the medications' advantages, disadvantages, and available alternatives were explained to him. In his principal brief, D.D.A. argues that there is no evidence that there were discussions with D.D.A. about medications because the only such evidence presented at the hearing was hearsay, but he admits in his reply brief "that an expert may form his medical opinion based on hearsay statements contained in treatment records."

negative effects, and that the treatment notes he reviewed in preparation for his testimony also indicate that WRC staff had discussed with D.D.A. a substitute prescription for one of the medications that negatively affected him.

¶24  Monese also explained at the hearing that D.D.A. often refuses to take the medication that he needs, stating that "[t]he only medication that he is one hundred percent compliant with is the one that is given intermuscularly" and that "he has not been one hundred percent compliant" with the oral prescriptions that he needs. According to Monese, this refusal to fully comply with his prescribed regimen led D.D.A. to engage in "threatening behaviors," which resulted in his transfer to a higher security prison. Monese testified that when he explained to D.D.A. that the failure to take all of the prescribed medications will cause him to experience negative side effects, D.D.A. still maintained that he would not take the medications.

¶25  The court found that D.D.A. is "incapable of applying an understanding of the advantages and disadvantages and alternatives to his condition in order to make an informed choice to accept or refuse psychotropic medication," and that he needs the medications and treatments.

¶26  We agree with the circuit court. The evidence offered at the hearing demonstrates that D.D.A. believes the medication he takes causes suicidal thoughts, anger, and a desire to hurt people. These beliefs are in stark contrast to the expert opinion of Monese, a board-certified psychiatrist, and are not rational. When D.D.A. denies that he suffers from his illness and contends that the medications cause the anger issues and suicidal thoughts, he demonstrates that he is substantially incapable of applying the information, for example, about a medication (how it will help treat his delusions, how it will interact with other

medications, and/or how a side-effect can be mitigated). His refusal to comply and testimony underscore his lack of understanding and insight into his mental illness and the advantages and disadvantages of the medications.

¶27 We conclude that the evidence presented at the hearing meets the requirements of WIS. STAT. § 51.20(1)(am), namely that if treatment were withdrawn, D.D.A. would likely stop taking his medication and as a result would once again be a proper subject for recommitment. We further conclude that there is sufficient evidence to support the circuit court's order for involuntary medication under WIS. STAT. § 51.61 (1)(g).

## CONCLUSION

¶28 We conclude that the petition was sufficient to put D.D.A. on notice of the basis for the recommitment sought by the County and that there was no due process violation that would justify reversal based on these facts. Based on the circuit court's findings, we also conclude that the record supports its determination that the County met its burden of establishing that D.D.A. meets the recommitment criteria set forth in WIS. STAT. § 51.20(1)(am). We affirm the circuit court's orders extending D.D.A.'s mental health commitment for a twelve-month period and ordering involuntary medication and treatment on an outpatient basis.

*By the Court*.—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14