IN RE the ESTATE OF Bert L. WARNECKE II:

Bert L. WARNECKE, SR., Appellant,

v.

Estate of Bert L. WARNECKE II, Respondent.

Court of Appeals

*No. 2005AP21. Submitted on briefs June 14, 2005.
—Decided March 30, 2006.*

2006 WI App 62

(Also reported in 713 N.W.2d 109.)

438

DEININGER, J., concurs.

On behalf of the appellant, the cause was submitted on the briefs of *Gregory P. Seibold* of *Murphy Desmond S.C.* of Madison.

On behalf of the respondent, the cause was submitted on the brief of *James C. Noonan* of Stevens Point.

A nonparty brief was filed on behalf of the State of Wisconsin by *Joanne F. Kloppenburg*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Deininger and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. Bert L. Warnecke, Sr. appeals an order of the circuit court denying his petition for return of real property in the administration of his deceased son's estate. Warnecke[1] argues WIS. STAT. § 77.88 (2003–04)[2] requires the Department of Natural Resources to withdraw the subject property from the Managed Forest Land (MFL) program due to noncompliance with certification requirements, and therefore a contingency in the quit claim deed granting the property to his son was not met. We conclude the withdrawal provision of § 77.88(2)(f) is directory and therefore does not require the DNR to withdraw the subject property from the MFL program due to noncompliance with certification requirements. We therefore affirm the circuit court's order denying Warnecke's petition for the return of real property.

## FACTS

¶ 2. On April 24, 2002, Warnecke and his wife quit claimed to their son, Bert L. Warnecke II, an unimproved parcel of real estate comprising approximately thirty-two acres, with Warnecke retaining a life estate in the property. The quit claim deed contained the following contingency:

---

[1] Throughout this opinion we refer to Bert Warnecke, Sr. as "Warnecke" and Bert Warnecke II as "Bert II."

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

441

> As a condition of this bequest, the Grantee shall take such steps as may be necessary to continue the enrollment of the above described real estate under the Managed Forest Lands Program.

The quit claim deed was recorded on May 1, 2002.

¶ 3. Bert II died on September 19, 2002, without ever taking the necessary steps to continue the real estate under the MFL program. He died intestate. On November 18, 2002, a Petition for Administration of Bert II's estate was filed.

¶ 4. On March 3, 2003, Bert II's girlfriend gave birth to a daughter. Genetic testing confirmed she is Bert II's biological daughter. On November 20, 2003, the personal representative of Bert II's estate filed a Notice of Land Conveyance and Petition for Transfer with the DNR on the advice of the estate's attorneys.

¶ 5. On June 22, 2004, Warnecke filed a Petition for Return of Real Property because of Bert II's failure to satisfy the contingency in the quit claim deed requiring him to take steps necessary to keep the subject real estate enrolled in the MFL program. A hearing was held on this petition on September 13, 2004. The circuit court denied the petition, concluding there had been a transfer of ownership for the purposes of triggering compliance with the MFL statutes, but also concluding the DNR was able to accept certification of a transfer more than thirty days after the transfer because the applicable statutes do not require receipt of certification within thirty days to maintain enrollment, and use of the term "shall" in these statutes is directory rather than mandatory. Warnecke appeals.

## DISCUSSION

¶ 6. We begin by discussing the Managed Forest Land program. The MFL program is generally con-

tained in Wis. Stat. §§ 77.80–77.91. The MFL program was established to encourage the management of private forest lands for the production of future forest crops for commercial use, consistent with protecting and promoting individual property owners' objectives and compatible recreational uses, watershed protection, development of wildlife habitat, and public access for recreational property. Section 77.80. A property owner may petition the DNR to designate eligible land as managed forest land under § 77.82(2). With the petition, the property owner may either submit, or have the department prepare, a management plan that asserts the owner agrees to comply with all the plan's terms and with statutory provisions. Section 77.82(3)(e).

¶ 7. After its investigation, the DNR shall approve a petition that meets certain criteria. Wis. Stat. § 77.82(7)(a). If a petition is approved, the DNR issues an order designating the land as managed forest land. Section 77.82(8). Each owner of managed forest land must permit public access to the land for recreation, except that an owner may designate up to a maximum of eighty acres as closed to public access. Wis. Stat. § 77.83(1)-(2).

¶ 8. The DNR may order the withdrawal of managed forest land for certain reasons, including the owner's failure to comply with statutory provisions. Wis. Stat. § 77.88(1)(b)2. If the DNR determines the land should be withdrawn, it must issue an order withdrawing the land and assess a statutory withdrawal tax and fee. Section 77.88(1)(c). When a person transfers ownership of managed forest land, within ten days of the transfer that person must submit a report of the transfer signed by the former owner and by the new owner, along with a transfer fee. Section 77.88(2)(d).

Within thirty days of the transfer, the new owner must submit to the DNR a form certifying the intent to comply with the existing management plan. Section 77.88(2)(e). If the new owner does not submit the certification, the DNR shall issue an order withdrawing the land and assess a withdrawal tax and fee. Section 77.88(2)(f).

¶ 9. The appellate questions before us involve the interpretation of WIS. STAT. § 77.88. We review questions of statutory interpretation de novo. *See State v. Sveum*, 2002 WI App 105, ¶ 5, 254 Wis. 2d 868, 648 N.W.2d 496. Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.*

¶ 10. WISCONSIN STAT. § 77.88(2) addresses the sale or transfer of MFL property and states, in relevant part:

> (e) The transferred land shall remain managed forest land if the transferee, within 30 days after the transfer, certifies to the department an intent to comply with the existing management plan for the land and with any amendments agreed to by the department and the transferee, and provides proof that each person holding any encumbrance on the land agrees to the

444

designation. The transferee may designate an area of the transferred land closed to public access as provided under s. 77.83. The department shall issue an order continuing the designation of the land as managed forest land under the new ownership.

(f) If the transferee does not provide the department with the certification required under par. (e), the department shall issue an order withdrawing the land and shall assess against the transferee the withdrawal tax under sub. (5) and the withdrawal fee under sub. (5m). Notwithstanding s. 77.90, the transferee is not entitled to a hearing on an order withdrawing land under this paragraph.

¶ 11. Warnecke argues the two "shalls" in Wis. Stat. § 77.88(2)(e) and (f) ("The transferred land *shall* remain managed forest land if the transferee, within 30 days after the transfer, certifies to the department an intent to comply with the existing management plan for the land" and "the department *shall* issue an order withdrawing the land") are mandatory, not directory, and therefore the DNR was compelled to issue an order withdrawing the land from the program. We disagree.

¶ 12. Although use of the word "shall" creates a presumption the statute is mandatory, the word "shall" may nonetheless be construed as directory if such a construction is "necessary to carry out the legislature's clear intent." *Karow v. Milwaukee Co. Civil Serv. Comm'n*, 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978). The following factors should be considered in determining the legislature's intent when presented with the word "shall" in the statutory context regarding time limits: (1) the omission of a prohibition or a penalty; (2) the consequences resulting from one construction or the other; (3) the nature of the statute, the evil to be

remedied and the general object sought to be accomplished by the legislature; and (4) whether the failure to act within the time limit works an injury or a wrong. *See id.* at 572; *see also Matlin v. City of Sheboygan*, 2001 WI App 179, ¶ 6, 247 Wis. 2d 270, 634 N.W.2d 115.

¶ 13. We agree with the circuit court that the "shall" contained in the withdrawal provision of Wis. Stat. § 77.88(2)(f) is directory rather than mandatory.[3] We address the *Karow* factors in order. We first note that there are indeed penalties assessed against a transferee who fails to provide proper certification; not only can the department withdraw the land from the MFL program but it can assess a withdrawal tax and withdrawal fee against the transferee. Section 77.88(2)(f), (5), (5m). The presence of a penalty lends support for construing the statute as mandatory. *See Karow*, 82 Wis. 2d at 571–72.

¶ 14. However, the second and third factors lend significant support for construing the provision as directory. The consequence of construing the statute to impose a mandatory time limit is withdrawal of lands from the MFL program that would otherwise continue in the program. The DNR Forest Tax Program Manager testified before the circuit court that the DNR, to encourage compliance with the MFL program, inter-

---

[3] For purposes of this opinion we assume without deciding that Warnecke's argument that the thirty-day time limit in Wis. Stat. § 77.88(2)(e) is incorporated into the "certification required" under § 77.88(2)(f), is correct, because even if we assume that this interpretation is correct, our determination that § 77.88(2)(f) is directory resolves the case in Bert II's estate's favor. Similarly, because our conclusion that the "shall" in § 77.88(2)(f) is directory resolves the case, we need not discuss whether the "shall" in § 77.88(2)(e) is directory.

prets WIS. STAT. § 77.88 to allow the DNR to approve a transfer and accept certification after the thirty-day period prescribed for compliance:

> [W]e have established a policy that we would like to get compliance with the law rather than throwing somebody out because then we have some control and some input as to the management of the forest on those lands. And that's what this program is an incentive program for.
>
> As a result, if—if we don't find out about the transfer until after the 30 days, we give the new owner an opportunity, 30 days or less, to file the transfer, and we move ahead with the transfer at that point.
>
> If they don't file the transfer, then we would withdraw them from the program with a penalty.

We conclude this interpretation furthers the purpose of the MFL program:

> The purpose of this subchapter is to encourage the management of private forest lands for the production of future forest crops for commercial use through sound forestry practices, recognizing the objectives of individual property owners, compatible recreational uses, watershed protection, development of wildlife habitat and accessibility of private property to the public for recreational purposes.

WIS. STAT. § 77.80. Interpreting this provision as mandatory would remove lands from this program for purely technical reasons that would often occur when a new owner is not aware of the provision, removing the very lands that the legislature intended to preserve through the MFL program.

447

¶ 15. Warnecke argues that the objective to be accomplished by the statute is "timely continued compliance with the requirements of the MFL program." We reject this argument because to hold this reasoning dispositive would be to determine that time limits are always mandatory, even when their mandatory application works against the purpose of the statutory scheme. A directory approach allows the DNR to further the purpose of the program by keeping lands in the program that in its expertise it deems worthwhile even if technical requirements are not met by transferees.

¶ 16. Warnecke further argues that the objective of "sound forestry practices" would be frustrated by allowing the DNR to keep lands in the program even if transferees have not met WIS. STAT. § 77.88(2)(f) because the withdrawal taxes and fees would not be collected, harming the taxpayers, and that there is the risk that during the period of noncompliance, the lands might be used for purposes inconsistent with the MFL. Warnecke notes that under a mandatory approach, lands removed from the program would still be eligible for later inclusion in the program, provided the owner met all the statutory requirements.

¶ 17. It is true that under a mandatory approach the program could still function, and transferees would be able to get lands readmitted to the program at a later date, but it is clear that the purpose of the program is better met by construing WIS. STAT. § 77.88(2)(f) as directory because the program would function much more effectively. The DNR retains the ability to remove lands from the program when owners are using the lands for purposes contrary to the program's purpose, and the program could retain lands that would otherwise be inadvertently ineligible for noncompliance with § 77.88(2)(f).

¶ 18. The fourth factor also lends support to the interpretation of the provision as directory. Warnecke has not persuasively demonstrated that the DNR's failure to issue an order withdrawing the land within thirty days after the property transferred resulted in an injury or a wrong. The wrong Warnecke points to is that the state would be deprived of future taxes and fees, and that he would lose control of the property. We disagree.

¶ 19. First, as we discuss above, the purpose of the statute, and thus the interests of the state, are better met by keeping properties in the program rather than assessing taxes and fees. Second, Warnecke's argument that losing control of the property would injure him is not dispositive because we note that whichever way we decide this case, one party stands to lose control of the property—Bert II's estate stands to lose control of the property if we construe the provision as mandatory rather than directory, and thus has an equally powerful argument for a statutory construction that saves him from injury. Third, we observe that there is no injury or wrong here such as that seen in *Matlin*, where a property owner would have had her buildings razed without a hearing if the time limits involved would have been mandatory. *Matlin*, 247 Wis. 2d 270, ¶ 9. After taking into account the *Karow* factors, this examination leads us to conclude that even if the thirty-day time period is read into Wis. Stat. § 77.88(2)(f), the time limit must be construed as directory, rather than mandatory.

¶ 20. Finally, Warnecke argues that the circuit court ignored *Rotfeld v. DNR*, 147 Wis. 2d 720, 434 N.W.2d 617 (Ct. App. 1988), where the DNR interpreted and the court concluded that Wis. Stat. § 77.16(7), a provision of the Woodland Tax Law program providing for declassification of land, was mandatory. Warnecke

argues that the DNR should be bound by its interpretation of that statute and hold the similar provision at issue here mandatory as well. We disagree.

¶ 21. We first note that the circuit court did not ignore *Rotfeld* but rather, in fact, considered that case and distinguished it based on the differing legislative purposes between the Woodland Tax Law and the MFL program. We agree with the trial court's analysis. The dual purposes of the Woodland Tax Law are "encourag-[ing] a policy of protecting from destructive or premature cutting the forest growth in this state," but doing so "in a manner which shall not hamper the towns in which such lands lie from receiving their just tax revenue from such lands." *See* WIS. STAT. § 77.01. In *Rotfeld*, we recognized these purposes were at odds with each other and concluded the provision declassifying lands and assessing tax penalties was mandatory, because the declassification and penalty provisions served the second purpose of preserving towns' interest in tax revenues. *Rotfeld v. DNR*, 147 Wis. 2d at 726–27. However, there is no parallel town interest purpose in WIS. STAT. § 77.80, and the two programs are distinguishable; the circuit court properly concluded WIS. STAT. § 77.88(2)(f) is directory.

## CONCLUSION

¶ 22. We conclude the withdrawal provision of WIS. STAT. § 77.88(2)(f) is directory upon the DNR and therefore does not require the DNR to withdraw the subject property from the MFL program due to non-compliance with certification requirements. We therefore affirm the circuit court's order denying Warnecke's petition for the return of real property.

*By the Court.*—Order affirmed.

¶ 23. DEININGER, J. (*concurring*). I join the majority in believing we must affirm the appealed order, but I would affirm for a different reason than the majority espouses. Because I would summarily affirm without deciding whether the Department of Natural Resources correctly interpreted its authority under WIS. STAT. § 77.88, I concur in only the majority's result.

¶ 24. The deed restriction on which Bert Warnecke, Sr., bases his claim for the return of the disputed real estate to him requires that the "Grantee shall take such steps as may be necessary to continue the enrollment of the . . . real estate under the Managed Forest Lands Program." By the time Warnecke petitioned the probate court for the return of the property, the deceased grantee's successor in interest (the personal representative of his estate) had taken such steps and the Department of Natural Resources had continued the property in the program. No further analysis by this court is necessary, or even proper, given that the department is not before us as a party to this litigation. The deed condition having been met, I would affirm the order denying Warnecke's petition without further discussion or inquiry.

¶ 25. The Department of Natural Resources was not a party to the present litigation in the circuit court and it is not a party to this appeal. Accordingly, neither we nor the circuit court could order the department, in this action, to reverse its determination to continue the property in the managed forest land program. We thus have no reason to inquire whether the department correctly interpreted WIS. STAT. § 77.88 or acted improperly by continuing the property in the program. The only way in which Warnecke could properly get a court

to order the department to reverse its determination would be for him to have commenced a timely action for judicial review of the department's action under WIS. STAT. § 227.53, assuming, of course, that he was a "person aggrieved" by the administrative decision, *see id.* The department could then have defended its action and its interpretation of § 77.88, and a court, having proper jurisdiction over the department, could have ordered the administrative determination reversed if it disagreed with the department's interpretation.[1]

¶ 26. Because the estate plainly prevailed by establishing that the property in question has continued to be enrolled in the managed forest land program, I would summarily affirm the appealed order. *See* WIS. STAT. RULE 809.21(1).

[1] After the parties briefed the appeal and it was submitted to this panel for disposition, the Department of Natural Resources moved for leave to submit a non-party brief, which we granted. Although we now have the benefit of the department's arguments in defense of its determination to continue the land in the program, the department's submission of a non-party brief does not provide either this court or the circuit court jurisdiction over it to affirm or reverse its determination. Further, I note that, after making its arguments on the merits of the statutory interpretation issue, the department also contends its decision to continue a transferred property in the managed forest land program, or to withdraw it from the program for failure to timely certify, "may be challenged only through judicial review under chapter 227, and may not be determined . . . in any other action." As discussed above, I agree.