**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 25, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1504-CR**

Cir. Ct. No. 2020CF603

STATE OF WISCONSIN

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOHN DEAN PLEUSS,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Monroe County: MARK L. GOODMAN, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

¶1 BLANCHARD, P.J. This appeal involves a civil proceeding in which John Pleuss seeks return of a shotgun that law enforcement seized from his possession when he was arrested and charged with crimes. Pleuss appeals a circuit

court order denying his application for the return of the shotgun under WIS. STAT. § 968.20 (2019-20).[1]  Pleuss argues that the court erred by concluding that his failure to file the application within 120 days after the initial appearance in the criminal case, as provided in § 968.20(1), deprived the court of competency to rule on the application.  Specifically, Pleuss argues that the 120-day deadline is "directory," not "mandatory" as the circuit court ruled.  We conclude that the deadline is directory.

¶2    The parties dispute the proper standard to be applied by the circuit court on remand for determining whether Pleuss's late filing should prevent consideration of his application on the merits.  We conclude that the circuit court must apply the excusable neglect standard set forth in WIS. STAT. § 801.15(2)(a).

¶3    Separately, Pleuss argues that the circuit court also erred in rejecting his application on an alternative ground.  The court determined that, even if it could reach the merits, the State proved that the shotgun was used in the commission of a crime, which if true defeats Pleuss's application under WIS. STAT. § 968.20(1m)(b).  In reaching this decision, the court concluded that it was sufficient for the State to meet its burden of proof by relying on the factual allegations in the criminal complaint that the State filed to initiate the criminal case.  Pleuss contends that, in this civil proceeding, the State could not meet its burden of proof that he used the gun in the commission of a crime based on the factual allegations in the criminal complaint alone because he disputed those

---

[1] WISCONSIN STAT. § 968.20 permits persons claiming rightful possession in seized property to "apply" to the circuit court for an order requiring its return; Pleuss filed such an application.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

allegations and the State never proved them. We agree that the State did not satisfy its evidentiary burden by relying solely on the factual allegations in the criminal complaint. Accordingly, we reverse the circuit court's order with regard to the shotgun and remand with instructions for the court to determine whether the late filing of the application was the result of excusable neglect, in which case the shotgun must be ordered returned.[2]

## BACKGROUND

¶4    On September 30, 2020, Monroe County Sheriff's Department deputies arrested Pleuss and seized a shotgun that was then in his possession. None of the details regarding that incident are pertinent to the issues we address in this appeal. Based on this incident, the State filed a criminal complaint charging Pleuss with (1) pointing a firearm, namely the shotgun, at a law enforcement officer in violation of WIS. STAT. § 941.20(1m)(b); (2) disorderly conduct in violation of WIS. STAT. § 947.01(1); and (3) operating a motor vehicle without carrying and displaying, upon demand, a license in violation of WIS. STAT. § 343.18(1). Using one typical mode used to prepare criminal complaints, the complaint here summarized and quoted from an incident report prepared by one of the arresting officers. Pleuss made an initial appearance on December 9, 2020.

¶5    On March 26, 2021, the State moved to dismiss all charges filed against Pleuss, for reasons not pertinent to this appeal. The court promptly granted the motion to dismiss.

---

[2] Pursuant to a stipulation of the parties that is not challenged on appeal, the circuit court also ordered in part that a handgun–which was seized from Pleuss along with the shotgun at the time of his arrest—be returned to him. Accordingly, we discuss the handgun no further in this opinion except to note that the circuit court's order is affirmed in this regard.

¶6 On April 15, 2021—127 days after Pleuss's initial appearance in the criminal case—Pleuss filed an application for the return of the shotgun pursuant to WIS. STAT. § 968.20.[3]

¶7 On June 8, 2021, the circuit court held a hearing on the application. Pleuss said in court that he owned the shotgun. This assertion was not offered as formal testimony, but it was not contested by the State in the circuit court nor does the State contest it now on appeal.

¶8 Instead, the State took the position that Pleuss had used the shotgun in the commission of the crime. Under WIS. STAT. § 968.20(1m)(b), a "dangerous weapon," such as the shotgun, is not to be returned to the person seeking its return if the person used it in the commission of a crime. The State's exclusive method for purporting to prove that Pleuss used the shotgun in the commission of a crime was to refer to the factual allegations contained in the by-then-dismissed criminal complaint against Pleuss. The following discussion occurred:

| Court: | So it looks like [the State has] the burden of establishing that the shotgun is contraband. |
|---|---|
| Prosecutor: | Yes, Your Honor, and I think the State has done that by the filing of the Criminal |

---

[3] We now briefly reference a procedural issue not addressed by the parties. Pleuss filed the application for return of the shotgun as a submission to the circuit court within the criminal action, even though proceedings under WIS. STAT. § 968.20 are *in rem* and "fall under the civil procedures of WIS. STAT. ch. 801." *Jones v. State*, 226 Wis. 2d 565, 595, 594 N.W.2d 738 (1999). The State does not argue that the procedure Pleuss used to pursue the application deprived the circuit court of *in rem* jurisdiction over the shotgun. *See City of Milwaukee v. Glass*, 2000 WI App 252, ¶3, 239 Wis. 2d 373, 620 N.W.2d 213 (involving application for return of seized property that was brought within the underlying criminal action); *but see* WIS. STAT. §§ 801.02(2) (requiring filing of summons and complaint for commencement of actions for *in rem* judgments), 801.07 (requiring service of summons to all defendants with interest in the property). Given the silence of the parties on this topic, we address it no further.

Complaint that demonstrates probable cause
of the crimes therein.

At no time did the prosecutor indicate an intent to call a witness or to introduce evidence to corroborate the factual allegations in the complaint. The prosecutor's implied position was that, because the complaint contained factual allegations that Pleuss had pointed the shotgun at a law enforcement officer, the State did not need to offer testimony or other evidence; the allegations in the filed criminal complaint were sufficient.

¶9 Pleuss objected to the State's exclusive reliance on the factual allegations in the criminal complaint. He argued that the State did not meet its "burden … in any way, shape, or form." Pleuss repeated this objection in a subsequent letter brief to the circuit court: "Simply put, the State's argument that a mere filing of [a] Criminal Complaint is sufficient proof in a court of law that a person 'committed a crime' is not supported by the law."

¶10 The circuit court denied Pleuss's application for the return of his shotgun. First, the court addressed the threshold issue of whether Pleuss's application was timely filed. The court reasoned that Pleuss's failure to abide by the 120-day statutory time limit deprived the court of competency to rule on the issue.[4] Second, the court ruled that, even if it could reach the merits, the State had

---

[4] The circuit court said that it had lost "subject matter jurisdiction," by which we understand the court to have concluded that Pleuss's failure to abide by a mandatory statutory time limit deprived the court of its competency to exercise its subject matter jurisdiction. *Village of Elm Grove v. Brefka*, 2013 WI 54, ¶16, 346 Wis. 2d 282, 832 N.W.2d 121, *amended on other grounds*, 2013 WI 86, 350 Wis. 2d 724, 838 N.W.2d 87 ("Although the circuit court may not be deprived of jurisdiction '[e]xcept as otherwise provided by law,' it may lack competency to render a valid order or judgment in a civil or criminal matter when the parties fail to meet certain statutory requirements." (quoted source omitted)).

(continued)

proven based on "the four corners of the complaint" that the shotgun was used in the commission of a crime and therefore is not subject to return. Pleuss appeals.

## DISCUSSION

¶11     We begin by addressing the statute that gives rise to this claim, WIS. STAT. § 968.20. We then turn to the effect of Pleuss missing the 120-day deadline to file his application. The final issue is whether the State could meet its burden to prove that the shotgun was used in a crime by relying on the factual allegations in the criminal complaint.

¶12     WISCONSIN STAT. § 968.20(1) "permits a person whose property has been seized by law enforcement to seek return of the property in circuit court." *State v. Branch*, 2015 WI App 65, ¶6, 364 Wis. 2d 582, 869 N.W.2d 542. The subsection is generally applicable to property that is seized as evidence but that is "not reasonably needed as evidence or for other investigatory reasons." *See* § 968.20(1g). As has occurred here, a party can initiate a § 968.20 proceeding for return of his or her property even if no government agency has initiated a separate forfeiture action. *See **Jones v. State***, 226 Wis. 2d 565, 577, 594 N.W.2d 738 (1999) (contrasting purposes of forfeiture actions initiated by government agencies with purposes of § 968.20 actions initiated by property owners). Subsection 968.20(1) states in pertinent part:

> Any person claiming the right to possession of property … seized … may apply for its return to the circuit court for the county in which the property was seized or

---

Further, we note for context that the circuit court raised—of its own accord, independently of the parties' arguments—the issue of whether the lateness of Pleuss's application filing deprived the court of competency to address the merits.

6

where the search warrant was returned …. If an initial appearance under [WIS. STAT. §] 970.01 is scheduled, the application for the return of the property shall be filed within 120 days of the initial appearance.

¶13     If the property at issue is a dangerous weapon, such as a firearm, WIS. STAT. § 968.20(1m) outlines additional requirements for its mandatory return, while also incorporating the requirements of § 968.20(1). *See* WIS. STAT. §§ 968.20(1m)(a)2., (d), 939.22(10) (defining "dangerous weapon"). Section 968.20(1m)(b) provides: "If the seized property is a dangerous weapon or ammunition, the property shall not be returned to any person who committed a crime involving the use of the dangerous weapon or the ammunition." This subprovision thus bars any person from obtaining an order for return of a dangerous weapon that was seized if the applicant used it in the commission of a crime. If all requirements under sub. (1) and sub. (1m) are met, "the court shall … order the property returned."[5]

¶14     Focusing on the requirements at issue in this appeal, a person seeking return of a seized firearm pursuant to WIS. STAT. § 968.20 must: (1) file an application within 120 days of the initial appearance (if any); and (2) not have used the firearm in the commission of a crime.

---

[5] Under WIS. STAT. § 968.20(1m)(d)1., the return of firearms also requires that the applicant "is not prohibited from possessing a firearm under state or federal law." There is no allegation that Pleuss is prohibited from possessing a firearm.

Further, also under WIS. STAT. § 968.20(1m)(d)1., one of several addition circumstances must be present to require the return of the firearm, including that "[a]ll charges filed in connection with the seizure against the person have been dismissed." As noted above, all of the criminal charges against Pleuss had been dismissed by the time of the proceeding at issue here, and therefore § 968.20(1m)(d)1.b. is satisfied.

### I.      Effect Of Missing 120-Day Deadline

¶15     Whether the circuit court lost competency to address the merits of the application turns on whether the 120-day statutory time limit in WIS. STAT. § 968.20(1) is mandatory or directory.  If it is mandatory, then Pleuss's late filing deprived the circuit court of competency to address the merits, but if it is directory then the court may be able to address the merits.  *See State v. L. Olson*, 2019 WI App 61, ¶11, 389 Wis. 2d 257, 936 N.W.2d 178.  Whether a statutory time limit is mandatory or directory presents an issue of statutory interpretation that we review de novo.  *State v. Schertz*, 2002 WI App 289, ¶6, 258 Wis. 2d 351, 655 N.W.2d 175.

¶16     Pleuss argues that the 120-day time limit in WIS. STAT. § 968.20(1) is directory, not mandatory and, therefore, his late filing did not deprive the circuit court of its competency to rule on the merits of his application.  The State agrees with Pleuss that the 120-day time limit in WIS. STAT. § 968.20(1) is directory.  However, as we discuss further below, the parties disagree about how the circuit court should proceed on remand in addressing Pleuss's failure to meet what they agree is a directory deadline.

¶17     We now address the mandatory-directory issue.   A statutory requirement is generally presumed to be mandatory when it uses the word "shall." *Karow v. Milwaukee Cnty. Civ. Serv. Comm'n*, 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978).  However, "shall" may be construed as merely directory "if necessary to carry out the legislature's clear intent." *Id.*  The following factors are used to determine whether a statutory time limit using the word "shall" is mandatory or directory:  (1) the statute's history; (2) evident purposes of the statute; (3) the consequences of interpreting the statutory time limit as either mandatory or

8

directory; and (4) whether a penalty or prohibition is imposed for the violation of the time limit. *See* ***State v. R.R.E.***, 162 Wis. 2d 698, 708, 470 N.W.2d 283 (1991); ***L. Olson***, 389 Wis. 2d 257, ¶13; ***Village of Elm Grove v. Brefka***, 2013 WI 54, ¶25, 348 Wis. 2d 282, 832 N.W.2d 121.

¶18 As we now explain, we agree with the parties that, applying the four factors, the 120-day time limit in WIS. STAT. § 968.20(1) is directory. Further below, we address the test to be applied by the circuit court on remand.

*A. Application Of Four Factors*

*1. Purpose*

¶19 We conclude that evident purposes of WIS. STAT. § 968.20(1) do not support a ruling that the time limit is either mandatory or directory. This is because we discern two legislative purposes reflected in the statutory language that push in opposite directions on this issue with approximately the same levels of significance.

¶20 Our supreme court has made the general observation that the legislature enacted WIS. STAT. § 968.20 to create "a simplified procedure for obtaining the return of property seized with or without a warrant that is neither contraband nor needed as evidence in a case." ***Jones***, 226 Wis. 2d at 577 (citing Judicial Council Committee Note, 1969; WIS. STAT. ANN. § 968.20 (West 1998); ***State v. Benhoff***, 185 Wis. 2d 600, 603, 518 N.W.2d 307 (Ct. App. 1994)); *see also* ***City of Milwaukee v. Glass***, 2001 WI 61, ¶18, 243 Wis. 2d 636, 628 N.W.2d 343 ("[t]he explicit purpose of § 968.20(1) is to hear all claims to the true ownership of property seized under certain conditions."). In itself, this "simplified procedure" concept favors a directory time limit, because it suggests a purpose of

ensuring that applicants for property return are afforded a simple method to potentially recover seized property. Mandating strict adherence to a time limit could undermine the possibility of an applicant recovering his or her property when that would otherwise be required.

¶21 However, the legislature relatively recently amended the statute to include the 120-day time limit, which in itself signals a purpose of promoting efficiency, and a preference for reliance on relatively fresher evidence, in the resolution of disputes over seized property. *See* 2017 Wis. Act 211, § 30. A mandatory time limit would obviously provide the strongest incentive for an applicant to timely file an application. Thus, while the overall purpose of providing applicants with a "simplified" opportunity to seek the return of property remains, the addition of the 120-day time limit is evidence of a second purpose— promoting timeliness in the filing and litigation of applications. *See **Warnecke v. Estate of Warnecke***, 2006 WI App 62, ¶21, 292 Wis. 2d 438, 713 N.W.2d 109 (a statute may have multiple purposes). When an application is filed late, as occurred here, the two purposes conflict and, because of that conflict, we conclude that the "purpose" factor does not weigh in either direction on the mandatory versus directory issue.

### 2. *Legislative History*

¶22 Similarly, we conclude that the legislative history of WIS. STAT. § 968.20(1) does not favor ruling that the time limit is either mandatory or directory.

¶23 As previously mentioned, the legislature amended WIS. STAT. § 968.20(1) to include the statutory time limit in 2018, before which the statute contained no explicit deadline to apply for the return of property. 2017 Wis. Act

211, § 30. We have not identified any legislative explanation for amendment of the statute to include a time limit. As such, and incorporating our analysis above from the "purpose" section, we conclude that the "legislative history" factor is a neutral one here.

### 3. Consequences Of Ruling In The Alternative

¶24 We weigh the consequences of interpreting the 120-day time limit as directory or mandatory in light of the statutory purposes identified above. *See Karow*, 82 Wis. 2d at 573 ("we must ascertain the consequences of holding that the time period is directory, and we must determine whether these consequences comport with the legislative purposes"); *R.R.E.*, 162 Wis. 2d at 709 (considering the alternative interpretations of the limit at issue with the statute's "objectives in mind"). Case law demonstrates that we also weigh relevant interests of individuals and the public in the accomplishment of those objectives. *See Karow*, 82 Wis. 2d at 573 (discussing effects of construing time limit in civil service statute on public interests and individual employee interests); *R.R.E.*, 162 Wis. 2d at 709-11 (discussing implications of interpreting time limit in criminal commitment statute as mandatory for statute's public protection objective). This factor also includes assessing whether a mandatory or a directory determination would "work[] an injury" to either party to the civil proceeding. *See Karow*, 82 Wis. 2d at 573; *R.R.E.*, 162 Wis. 2d at 711-12 (noting injury to criminally committed individual created by interpreting deadline imposed on the State to be directory). Pertinent to this consideration is whether enforcing the statutory requirement at issue as mandatory would deprive a party of the exclusive means of seeking relief. *See Matlin v. City of Sheboygan*, 2001 WI App 179, ¶¶7-13, 247 Wis. 2d 270, 634 N.W.2d 115 (reasoning that if a missed statutory deadline were

deemed mandatory, it would deprive homeowner of opportunity to be heard under exclusive statute for contesting reasonableness of a raze order).

¶25    Applying these concepts here, this factor depends on the effect that a mandatory or directory time limit would have on the legislative purpose of WIS. STAT. § 968.20 to provide a simplified procedure for law enforcement custodians to return seized property to rightful owners in a timely manner and on the parties' interests in those purposes.  This factor also depends on the potential for an "injury" to the parties or others interested in the statute's objectives.

¶26    In a case such as this one, in which the State has not initiated a forfeiture proceeding, WIS. STAT. § 968.20 is the exclusive vehicle for the property owner to use to obtain a circuit court order for the return of property seized by state agents.  *See **Jones***, 226 Wis. 2d at 569.  For this reason, the consequence of ruling the time limit mandatory could be the potential deprivation of the applicant's opportunity for potential recovery.

¶27    This is all the more significant because WIS. STAT. § 968.20(1) is not limited to the return of property belonging to persons charged with crimes; the section applies to property belonging to "[a]ny *person* claiming the right to possession of property …" (emphasis added).  Of course here, on the undisputed facts, Pleuss was aware that his gun had been seized.  However, in other cases property owners might not be aware that their properties have been seized for an extended period after seizure—perhaps most frequently, those owners who are not charged with crimes.  For example, property taken from the owner's possession by

a third party might fall into eventual police custody.[6]  Ruling the 120-day time limit mandatory would place especially harsh consequences on those owners who discover only after the 120-day time limit that their properties are in the custody of law enforcement after a seizure.  This weighs in favor of a directory time limit.

¶28    Related to this last point, in the case of firearm owners, several factors that are always or at least typically outside the control of an owner can effectively shrink the window of time available to prepare a statutorily compliant application before the 120-day deadline has run.  The firearm owner does not control when the initial appearance occurs, which is based on the timing of events controlled by state actors, such as an arrest or the filing of a criminal complaint based on a referral from a law enforcement agency.  Beyond that, the owner may not have control over the timing of events that need to occur before a firearm may be returned under WIS. STAT. § 968.20(1m)(d)1., such as the dismissal of all charges or acquittal of all charges at trial.  The effect is that in some cases a firearm owner will have little, if any time, within the 120-day window following an initial appearance to file an application that complies with the requirements of sub. (1) and sub. (1m)(d), even if the owner is aware of the seizure.

---

[6] On the topic of the potential for a rightful owner of property to ["potential" already covers "might"]not learn promptly that his or her property is being held by law enforcement, we note the following.  Municipal custodians of seized property have varying obligations to notify the rightful owners of seizures, or to return properties, when the property is no longer required for use as evidence.  *See* WIS. STAT. § 968.20(3)-(4).  This variation is based on the classification of the municipality (*e.g.*, a town versus a first-class city) and the type of property.  *See id.*  These provisions authorize or require procedures by which custodians are to "attempt" to notify the rightful owner of the seizure of property or "attempt" to return it.  *See, e.g.*, § 968.20(3)(b) (cities, villages, towns and counties that are custodians of "seized dangerous weapon or ammunition" "shall make reasonable efforts to notify all persons who have or may have an authorized rightful interest" in the property if its "not required for evidence or use in further investigation and has not been disposed of pursuant to a court order at the completion of a criminal action or proceeding").

13

¶29 As noted above, one potential benefit of a mandatory deadline would be to provide a stronger incentive for promoting timely filing by applicants. However, even if an applicant has notice of law enforcement possession of the property at or around the time of its seizure by law enforcement, treating the 120-day time limit as mandatory would disproportionately harm late applicants compared to the benefits that a directory 120-day time limit would have. Other excusable reasons why an applicant failed to file his or her application within the 120-day time limit could exist. Taking away the opportunity to recover seized property could be a harsh consequence for untimely filing. Moreover, as discussed below, the fact that late-filing applicants would need to show a justifiable excuse for a late filing would still advance the deadline's evident purpose of encouraging timely litigation in this context.

¶30 As further support for this conclusion, if the 120-day deadline is treated as directory, the State submits that doing so "will have a less significant impact on" persons and entities *other* than the owners of seized property, such as court system actors or law enforcement agencies. The State notes that local governments already have the ability to enact ordinances to facilitate the return of property to rightful owners at any time after the property is no longer needed, which the State contends minimizes any additional burden created by treating the 120-day time limit as directory. *See* WIS. STAT. § 968.20(4); *supra* note 6.

### 4. Penalties In Statute

¶31 Turning to the fourth and final factor, the parties agree that WIS. STAT. § 968.20(1) does not include a penalty for noncompliance with the 120-day time limit, such as a statement that dismissal is required if the time limit is not met. The legislature's omission of a penalty for exceeding the statutory time limit

weighs especially strongly in favor of ruling the time limit directory. *See L. Olson*, 389 Wis. 2d 257, ¶29.

¶32 In sum regarding this subissue, on balance the four factors weigh in favor of making the 120-day statutory time limit in WIS. STAT. § 968.20(1) directory.

*B. Consequences For Failure To Meet Directory Deadline*

¶33 Our conclusion that the time limit is directory does not settle the issue here. A determination that a time limit is directory does not mean that compliance by someone in Pleuss's position is "merely discretionary or permissive." *See R.R.E.*, 162 Wis. 2d at 715.

¶34 The parties dispute whether the circuit court on remand should require Pleuss to prove "excusable neglect" under WIS. STAT. § 801.15(2)(a). This is the State's position, while Pleuss's positions are less clear. We agree with the State for reasons we now explain.

¶35 In the context of civil proceedings, WIS. STAT. § 801.15(2)(a) permits circuit courts to enlarge the statutory window of time for compliance with a missed deadline if no statutory provision for lateness more specifically controls and the party moving for enlargement can prove "excusable neglect."[7] *See*

---

[7] WISCONSIN STAT. § 801.15(2)(a) states:

> When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. The 90 day period under [WIS. STAT. §] 801.02 may not be enlarged. If the motion is made after the expiration of the specified time, it shall not be granted *unless the court finds that the failure to act was the result of excusable neglect*. The order of enlargement shall

(continued)

15

*Ahrens-Cadillac Oldsmobile, Inc. v. Belongia*, 151 Wis. 2d 763, 766, 445 N.W.2d 744 (Ct. App. 1989).  Excusable neglect is "'that neglect which might have been the act of a reasonably prudent person under the same circumstances,' but which is not 'synonymous with neglect, carelessness or inattentiveness.'"  *Casper v. American Int'l S. Ins. Co.*, 2011 WI 81, ¶37, 336 Wis. 2d 267, 800 N.W.2d 880 (quoted source omitted); *see also* *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 474-75, 326 N.W.2d 727 (while "prompt" actions by a party to remedy a failure to follow a statutory deadline constituted "'a material factor bearing on whether relief should be granted,'" "prompt action does not eliminate the requirement that a dilatory party demonstrate excusable neglect for its initial failure to meet the statutory deadline" (quoted source omitted)).

¶36   Applications for the return of property filed under WIS. STAT. § 968.20 are civil *in rem* proceedings.  *Jones*, 226 Wis. 2d at 595.  For this reason, they are governed by the civil procedures of WIS. STAT. ch. 801.  *Jones*, 226 Wis. 2d at 595.  Because WIS. STAT. § 801.15(2)(a) permits the enlargement of a statutory time-window based on excusable neglect, and *Jones* teaches that chapter 801 controls in § 968.20 applications, it follows that § 968.20 allows the circuit court to enlarge a time limit in that statute for excusable neglect when a party fails to meet that limit.  Further, our supreme court has suggested that directory time limits may be enlarged when there is a showing of excusable neglect under § 801.15(2)(a).  *Brefka*, 348 Wis. 2d 282, ¶22 n.8 ("Construing the word 'shall' as merely directory arguably allows the circuit court discretion to extend the ten-day

---

recite by its terms or by reference to an affidavit in the record the grounds for granting the motion.

(Emphasis added.)

time limit [of WIS. STAT. § 343.305 (implied consent statute)] due to excusable neglect.").

¶37    Pleuss asserts that the issue is not whether there was excusable neglect.  But it is unclear what position Pleuss takes on the appropriate procedure to use when there is a late filing and WIS. STAT. 968.20(1) is directory.

¶38    At least at one point in his briefing, Pleuss relies on a line of cases specifically addressing the test to be applied to restitution orders in criminal cases that are produced outside statutory time limits, which are limits that have been deemed directory.  *See* ***State v. Perry***, 181 Wis. 2d 43, 57, 510 N.W.2d 722 (Ct. App. 1993); ***State v. Johnson***, 2002 WI App 166, ¶¶8-10, 256 Wis. 2d 871, 649 N.W.2d 284; ***State v. Ziegler***, 2005 WI App 69, ¶¶14-16, 280 Wis. 2d 860, 695 N.W.2d 895.  As Pleuss notes, in that restitution order context this court has characterized the test to be "akin to a balancing test," in which "the court must balance the length and reasons for the delay against the injury, harm or prejudice to the defendant resulting from the delay." ***Ziegler***, 280 Wis. 2d 860, ¶¶14, 18, 21 (citing ***Perry*** for the proposition that "restitution orders resulting from proceedings held outside the statutory time period for valid reasons may be upheld, provided that doing so will not result in prejudice to the defendant.").  However, while Pleuss is correct that some precedent has not applied the "excusable neglect" analysis to directory statutory time limits, none of the cases he cites even allude to the concept of excusable neglect or to WIS. STAT. § 801.15(2)(a).  Moreover, the line of cases he cites involves a "valid reason" test that, so far we can discern, appears to be limited to the specific context of late-created restitution orders and, therefore, is not pertinent here.  Further, in advancing the "valid reason" test, Pleuss does not explain why the straightforward analysis of § 801.15(2)(a) put forward by the State does not control here.

17

¶39    Pleuss may mean to separately argue that there should be no negative consequence for his failure to abide by a directory time limit—that the circuit court was obligated to excuse the late application.  He notes that, in *Matlin*, this court determined that the statutory time limit in WIS. STAT. § 66.0413(1)(h) (1999-2000) was directory, without explicitly requiring the late applicant to prove anything to the circuit court on the issue.  *Matlin*, 247 Wis. 2d 270, ¶15 (ordering the circuit court to "schedule the hearing at the earliest convenient time.").  Likewise, Pleuss observes that, in *Warnecke*, we concluded that the time limit in WIS. STAT. § 77.88(2)(e) (2003-04) (as applied to § 77.88(2)(f)) was directory, without explicitly addressing the issue of potentially negative consequences for a party's failure to abide by the directory time limit.  *See Warnecke*, 292 Wis. 2d 438, ¶13.

¶40    If Pleuss intends to argue that there could be no possible negative consequences for his failure to abide by the time limit in WIS. STAT. § 968.20 we reject that argument.  In neither *Matlin* nor *Warnecke* did we expressly, or even implicitly, grapple with the proper procedure to address the parties' failures to follow the relevant statutory time limits.  Moreover, these cases both predate our supreme court's statement in *Brefka* suggesting that directory time limits in civil cases are resolved based on the excusable neglect standard.  Further, it would be entirely at odds with precedent noted above, under which directory time limits are not "merely discretionary or permissive," if there could be no possibility of negative consequences for a party's failure to meet a statutory time limit.  *See R.R.E.*, 162 Wis. 2d at 715; *Perry*, 181 Wis. 2d at 56.  The legislature's decision to include a time limit must be given meaning.

¶41 Summarizing the last two subissues, the deadline in WIS. STAT. § 968.20(1) is directory only, but Pleuss must show "excusable neglect" for the late filing under WIS. STAT. § 801.15(2)(a).

## II. State's Failure To Meet The Burden Of Proof

¶42 The second major issue is whether the State proved to the circuit court that Pleuss "committed a crime involving the use of the [gun]," which as we have noted would prevent the court from ordering its return pursuant to WIS. STAT. § 968.20(1m)(b). More specifically, the issue is whether the factual allegations contained in the criminal complaint satisfy the State's burden in this context when the prosecutor did nothing more than refer to its having been filed to initiate the criminal case. Whether a party has met its burden of proof is a question of law that we review de novo. *Jones*, 226 Wis. 2d at 596. For reasons we now explain, we conclude that under the circumstances here, the State failed to offer any evidence and consequently did not meet its burden of proof, requiring return of the shotgun if Pleuss can show excusable neglect for the late filing.

¶43 Pleuss argues that the State did not satisfy its burden of proof by relying solely upon the filing of the criminal complaint as "evidence" to prove that Pleuss used the shotgun in the commission of a crime. He argues that, because the factual allegations in the complaint had no evidentiary value in proving that he used the shotgun in the commission of a crime, the State offered *no* evidence on the issue. Pleuss further contends that, because he made a timely objection that the factual allegations in the complaint were not evidence, and the prosecutor still failed to produce any evidence, the State should not now be permitted what Pleuss refers to as a "do over." In sum, Pleuss argues that, because the State failed to

19

provide any evidence that he used the shotgun in the commission of a crime, the shotgun must be returned.

¶44 The State argues that the circuit court "properly consider[ed] the complaint as substantive evidence." More specifically, the State argues that the factual allegations in the complaint are admissible hearsay under the public records exception in WIS. STAT. § 908.03(8) and that Pleuss has forfeited any objection on hearsay and authenticity grounds. Separately, the State acknowledges that the court used as a measuring stick the wrong quantum of proof when determining whether the State presented sufficient evidence that Pleuss used the shotgun in the commission of a crime. Therefore, according to the State, remand is necessary for the circuit court to apply the proper standard.

¶45 To repeat, it is uncontested that Pleuss had the right to possess this particular shotgun before it was seized by law enforcement. *See **Jones***, 226 Wis. 2d at 595 (applicant has initial burden to prove to circuit court's satisfaction that applicant has right to possess the property). Therefore, at the hearing convened by the circuit court the State had the burden of proving that Pleuss used the shotgun in the commission of a crime "by the greater weight of the credible evidence."[8] *See **id.***

---

[8] We now briefly explain an error by the circuit court in determining the applicable *quantum of proof*, separate from the issue addressed in the text of whether the prosecutor relied on a proper evidentiary basis. In explaining its decision on the merits, the circuit court said that the factual allegations in the criminal complaint "establish[ed] probable cause" that the shotgun was used in the commission of a crime. It is true that the probable cause portion of the complaint established probable cause for the offense, which would be pertinent at, for example, an initial appearance proceeding in the criminal case. But for purposes of the civil proceeding at issue here, as the parties now agree, "probable cause" is not the correct standard of proof in reference to the State's burden of persuasion in response to Pleuss's application for return of his shotgun. We need not address this topic further because we explain in the text why we separately conclude that the State did not provide the circuit court with *any* evidence on which the court could

(continued)

20

¶46     In itself, it does not matter that the criminal charges against Pleuss had been dismissed by the time the circuit court considered Pleuss's application for return of his shotgun.  The State can meet its burden even if charges were never filed or were subsequently dismissed.  *See Jones*, 226 Wis. 2d at 600; *State v. Kueny*, 2006 WI App 197, ¶12, 296 Wis. 2d 658, 724 N.W.2d 399.

¶47     We begin our discussion of this issue by providing additional background, then addressing and applying legal principles that demonstrate that the complaint could not be relied upon as evidence in the context of this case.

*A.  The Criminal Complaint*

¶48     In the ordinary way, the State here filed a criminal complaint stating the charges to initiate the criminal case against Pleuss.  *See* WIS. STAT. § 968.01(2) ("The complaint is a written statement of the essential facts constituting the offense charged.").  Summarized in the complaint were factual allegations, offered as a basis to find probable cause for each charged offense.  *See State ex rel. Pflanz v. County Court*, 36 Wis. 2d 550, 557, 153 N.W.2d 559 (1967) ("the underlying facts manifesting probable cause must be found in the written complaint.").  The factual allegations all purported to be quotes or paraphrases taken from a police report authored by an arresting deputy.

¶49     To recap, at the hearing for the application for the return of the seized shotgun, the prosecutor took the position that, "the filing of the Criminal Complaint … demonstrated probable cause of the crimes therein," and therefore

determine that Pleuss used the shotgun in the commission of a crime and therefore the State could not meet its burden of proof.

the State had met its burden of proof. The prosecutor called no witnesses, did not claim to have a stipulation of facts between the parties, and offered nothing to meet its burden beyond making this statement, despite objections by Pleuss.

### B. Using The Complaint As Evidence

¶50 Before discussing the State's attempt to rely exclusively on the factual allegations in the criminal complaint as purported evidence in the civil proceeding here, we first observe the following about the role of a criminal complaint generally. A criminal complaint is a "written statement of the essential facts constituting the offense charged." WIS. STAT. § 968.01(2). It is a "self[-]contained charge" that the State files as the exclusive means to establish probable cause, separate from all evidence that the State eventually adduces at trial. *See State v. Haugen*, 52 Wis. 2d 791, 793, 191 N.W.2d 12 (1971). It is "the first of many steps in a criminal prosecution. Its essential function is informative, not adjudicative." *State v. P. Olson*, 75 Wis. 2d 575, 583, 250 N.W.2d 12 (1977) (determining that the complaint at issue in that case had "adequately stated facts sufficient ... to justify the issuance of a warrant"); *see also* WIS. STAT. § 968.02(2) (filing of the complaint commences the action). This informative function is "to set forth sufficient facts from which a reasonable person could conclude that a crime was probably committed and that the defendant probably committed it," and it is "*not an exhibit or evidence*." *State. v. Gilles*, 173 Wis. 2d 101, 116-17, 496 N.W.2d 133 (Ct. App. 1992) (emphasis added) (determining that the circuit court properly denied the jury's request to see the criminal complaint as part of its deliberations because that "would have served only to mislead the jury"); *see also State v. Larsen*, 165 Wis. 2d 316, 320, 477 N.W.2d 87 (Ct. App. 1991) ("Because charging documents contain only allegations of fact, they generally are not admissible in evidence."). "A complaint is nothing more than a written, formal

accusation against a defendant charging the commission of one or more criminal acts. [A jury is] not to consider it as evidence in any way." WIS JI—CRIMINAL 145.

¶51 While a criminal complaint is "informative, not adjudicative," there are specific circumstances in which it can be relied on for the truth of the matters it alleges. As occurs with high frequency in criminal cases at the time of hearings on changes of pleas, when a defendant stipulates or asserts to the veracity of the factual allegations in a criminal complaint a court may rely on the substance of the allegations. *See, e.g.*, **State v. Black**, 2001 WI 31, ¶¶6, 13, 242 Wis. 2d 126, 624 N.W.2d 363 (the circuit court may rely on the factual allegations in the complaint to provide a factual basis in a plea hearing after the court explicitly asks and receives permission from the defense to do so); *see also* **State v. Blalock**, 150 Wis. 2d 688, 698, 442 N.W.2d 514 (Ct. App. 1989) (when the defendant stipulates to the factual allegations in a criminal complaint for use in conjunction with a witness's testimony at a preliminary hearing, the circuit court may rely on those allegations to find probable cause to bind over the case).

¶52 Turning to the use of a criminal complaint in the civil proceeding here, the State provides us with no basis to treat the criminal complaint as having any evidentiary value. One circumstance in which the factual allegations in a criminal complaint have been properly considered in a WIS. STAT. § 968.20(1m) proceeding (as here, an application for the return of guns) was when the applicant *admitted* to the veracity of the allegations in the complaint and himself attempted to rely on the factual allegations. *See* **State v. Leonard**, 2015 WI App 57, ¶¶10-17, 364 Wis. 2d 491, 868 N.W.2d 186. In **Leonard**, the applicant admitted that the factual allegations in the complaint were true in an attempt to prove that none of the guns seized were used in the commission of a crime. *Id.*, ¶12. This court did

not take issue with the applicant admitting to and then relying on the factual allegations in the criminal complaint in his civil property-seizure proceeding, but we did not suggest that the State could have relied on the allegations absent the admission by the applicant. *See id.*, ¶¶15-16.

¶53     Similarly, a charge that is dismissed and read-in, as part of a plea agreement in which the defendant *makes admissions*, can be used to prove that the defendant committed the read-in offense. *See Kueny*, 296 Wis. 2d 658, ¶14.  In *Kueny*, the court relied on charges that had been dismissed, but were read-in under the terms of a plea agreement, as evidence that the return of the applicant's shotgun was barred under WIS. STAT. § 968.20(1m)(b). *Kueny*, 296 Wis. 2d 658, ¶¶4, 13-14.  This court rejected the applicant's argument that, because the charges were dismissed, the State had not proven that he had committed a crime with a firearm. *Id.*, ¶¶11-13.  We determined that a read-in charge resulting from a plea agreement constituted an admission to the charged offense, and could be used as evidence to prove that the gun could not be returned. *Id.*

¶54     This case law establishes that circuit courts may rely on the factual allegations in criminal complaints when the allegations have not been disputed by applicants.  That was not the case here.  The allegations were never admitted or proven.  In the circuit court Pleuss consistently objected to the State's use of the allegations in the complaint as evidence.  For these reasons, we discern no basis for the State to rely on the allegations of the complaint to prove that Pleuss committed a crime with the shotgun.[9]

---

[9] We make the obvious point that this appeal could have been avoided if the prosecutor had simply called the deputy who personally witnessed the events alleged in the complaint to testify, subject to cross examination by Pleuss. *See, e.g.*, *Jones*, 226 Wis. 2d at 597-98 (noting, in

(continued)

¶55    The State fails to provide a viable explanation of how the circuit court could properly rely on the factual allegations contained in the criminal complaint in this context. One possible interpretation of the State's position is that it asks us to view the criminal complaint as if the prosecutor had called a witness with personal knowledge of the complaint and moved for its admission into evidence, perhaps establishing a status equivalent to that of a sworn affidavit by the deputy who swore to the complaint before it was filed to initiate the criminal case. However, even if the factual allegations in the criminal complaint could be viewed as the averments of an affidavit submitted for purposes of this seizure proceeding, Pleuss was never given the opportunity to provide contrary averments, as he protested in the circuit court.

¶56    The State argues that the factual allegations in the complaint fall into a hearsay exception and therefore are admissible as evidence supporting the truth of the matters alleged. *See* WIS. STAT. § 908.03(8) (public records exception).[10]

---

context of application for return of currency, that the circuit court credited the testimony of officer at suppression hearing, subject to cross examination, that currency was used in a crime; "Jones presented no evidence to the contrary").

[10]    WISCONSIN STAT. § 908.03(8) excepts from hearsay:

> [r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to [a] duty imposed by law, or (c) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate [a] lack of trustworthiness.

*See also* **Boyer v. State**, 91 Wis. 2d 647, 661-663, 284 N.W.2d 30 (1979) (determining that a police report itself "conforms with the [hearsay] exception stated in sec. 908.03(8)" if the reporting officer him or herself would be competent to testify about the allegations and other layers of hearsay also fit an exception).

The State posits that, because the police report that was summarized in the complaint was written by a deputy who was fulfilling his responsibilities by investigating crimes, and because a district attorney's responsibilities include the filing of a complaint to initiate criminal prosecutions, the whole of the criminal complaint based on the report could be used as evidence. The end result of the State positions would be that, because the factual allegations in the complaint met a hearsay objection, they can be considered to have evidentiary value for "the truth of the matter asserted." *See* WIS. STAT. § 908.01(3) (definition of hearsay). As we now explain, we reject the State's contention that the complaint meets a hearsay exception.

¶57    While it is true that a police report standing alone may be admissible evidence, *see supra* note 10, the State here unambiguously relied exclusively on the factual allegations in the criminal complaint as purported evidence and did not call a witness to offer the police report as piece of evidence. As we discuss above, the factual allegations in criminal complaints have no evidentiary value unless the applicant has admitted to them or at least failed to dispute them. The exception in WIS. STAT. § 908.03(8) does not apply when the "sources of information or other circumstances indicate [a] lack of trustworthiness." Here, the fact that a criminal complaint is merely an uncorroborated charging document that the State prepares to initiate a criminal proceeding falls into the category of circumstances that "indicate [a] lack of trustworthiness." Taken to its logical result, the State effectively invites us to apply a rule that would allow it to unilaterally retain seized property based solely on a "probable cause" standard, which the State acknowledges is too low a standard. Instead, contested hearings, which provide adversaries with the vital tool of cross examination, are needed to test the truth of the allegations in the complaint and other pleadings. The criminal complaint, a

26

mere informational charging document filed by an adversarial party, standing alone lacks sufficient trustworthiness to meet the "public records" hearsay exception.

¶58    The State asserts that, if the factual allegations in a criminal complaint have no value as evidence in this context this would create absurdities in other contexts:  the State could never charge a person for falsely swearing to the allegations in a criminal complaint, nor could a party impeach a witness who testified inconsistently with his or her sworn statements reflected in a criminal complaint.  This argument rests on false premises about how the complaint becomes evidence in these scenarios.

¶59    In a false swearing case, as our supreme court has explained, the State offers the criminal complaint not as "'evidence of a fact admitted or alleged,'" but instead as evidence that the complaint "[is] a verified pleading and that [the complainant] swore that the facts stated therein were true."  *Lappley v. State*, 170 Wis. 356, 359, 174 N.W. 913 (1919) (quoted source omitted). Therefore, "[p]roof of the truth or the falsity of the facts thus sworn to in the complaint [is] required to be made by evidence *other* than by the contents of the complaint."  *Id.* at 360 (emphasis added).  Evidence extrinsic to the complaint is needed to attempt to prove that the pleading contained false information.  *See id.* at 359-60.

¶60    Similarly, when a criminal complaint is used for impeachment regarding prior inconsistent statements, it is generally used merely to show inconsistency in the testimony, not to prove the truth of any matter alleged in the complaint.  *See Shoemaker v. Marc's Big Boy*, 51 Wis. 2d 611, 618, 187 N.W.2d 815 (1971) ("[t]he generally recognized purpose of permitting inconsistent prior

27

statements is … not to show the truth of the matters asserted therein but merely to show inconsistency of testimony."). Under Wisconsin law, prior inconsistent statements may be admitted as substantive evidence if they fall into a recognized exception or exemption to the hearsay rules. *Id.* WISCONSIN STAT. § 908.01(4)(a) exempts prior statements by a witness from hearsay. However, the exemption requires the declarant to testify at the hearing and be subject to cross-examination. Here, the prosecutor failed to call any witness and the State now fails to explain how Pleuss was supposed to be able to test the factual allegations in the complaint through cross-examination. In this situation, the complaint did not fall into a hearsay exception or exemption and could not be used as substantive evidence. Had the State here sought impeachment through use of the complaint, it could have used the complaint to show inconsistency in the testimony, but not the truth of any allegation in the complaint.

¶61    The State suggests an additional argument that the circuit court could properly take judicial notice of the factual allegations in the complaint. *See* WIS. STAT. § 902.01 (judicial notice). A court may take judicial notice of a fact that is either "[a] fact generally known within the territorial jurisdiction of the trial court," or "[a] fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Sec. 902.01(2). It is self-evident that neither scenario is present here. *See* ***Vogel v. State***, 87 Wis. 2d 541, 552, 291 N.W.2d 838 (Ct. App. 1979) (stating that the "'mere presence'" of an oath has "'never been regarded as sufficient to remove a statement from the hearsay category.'" (quoted source omitted)).

¶62    In sum, the State failed to provide any evidence to meet its burden of proof in this civil proceeding by merely relying on the factual allegations contained in the criminal complaint.

### B. Consequences Of State's Failure To Provide Evidence

¶63    The State requests that the merits of Pleuss's application be remanded to the circuit court so that the court may apply the proper burden of proof—"by the greater weight of the credible evidence"—instead of the "probable cause" standard that the court mistakenly applied. *See supra* note 8. But we have explained why we conclude that the State completely failed to meet its burden of proof. Having failed to produce any evidence to show that Pleuss used the gun in the commission of a crime, the State must return it, if the late filing of the application should be excused. *See **Branch***, 364 Wis. 2d 582, ¶¶2, 10 (rejecting argument that circuit court could use inherent authority to offset judgments to justify withholding cash not proven to be contraband from applicant-defendant and remanding to order cash returned). The State is not entitled to a "do-over" to modify the record when it decided to rely exclusively on the factual allegations in the complaint, over the objection that the State failed to present any evidence. *See **State ex rel. First Nat. Bank of Wisconsin Rapids v. M & I Peoples Bank of Coloma***, 95 Wis. 2d 303, 318, 290 N.W.2d 321 (1980) (party with burden to prove fact on a topic who failed at first trial to introduce any evidence on the topic, due to a legal error, not allowed second trial for the opportunity to offer missing proof it could have offered at first trial). The State had a fair opportunity to introduce evidence that Pleuss used the shotgun in the commission of a crime during the initial proceedings but failed to do so.

¶64    Summing up, Pleuss cannot obtain the order for return of the shotgun without first proving to the circuit court that he failed to meet the time limit due to excusable neglect. But if he can make that showing, the circuit court is to order the return of the shotgun because the State failed to provide any

evidence on the single ground that it offered for non-return, namely, that he used the shotgun to commit a crime.

## CONCLUSION

¶65    For all of these reasons, we affirm the circuit court's order for return of the handgun, reverse the order denying Pleuss's application for the return of the shotgun, and remand for further proceedings consistent with this opinion.

*By the Court*.—Order affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.